FARMER, Judge.
We reverse a final order awarding an elective share to a surviving spouse. The award was made possible only because the trial court decided that a post nuptial property settlement agreement was no longer effective because the parties to the agreement had later reconciled. We hold that the agreement was fully effective and was not abrogated by the parties’ later reconciliation.
We borrow liberally from the trial court’s principal findings of fact:
“Decedent married the Petitioner, Lydia Duggan (‘Wife’), in 1942. They had nine children who are divided as to their mother’s claims. The children describe their mother as a saint or a conniving tyrant, depending on their alignment in this dispute. On the other hand, their father (decedent), was a strong-willed, heavy-drinking, cheap[1] and domineering man, but, again depending on the family alignment in this dispute, may have considerably mellowed in later years.
“In 1975 [sic — 1979?], all of the problems which had been stewing for the past 37 years came to a boiling point and the Wife filed for divorce. It is not necessary to recite all of the problems, but the bottom-line was that each felt the other was improperly getting control of, or transferring, marital assets. During that period of time, the decedent was not always living in the marital home and it must be said that the parties were separated for purposes of a potential divorce.
“Ultimately, the decedent and Wife entered into a Post-Nuptial Agreement (‘Agreement’), pursuant to which their marital assets were divided. That resulted in an order entered by the Circuit Court of Florida’s Seventeenth Judicial Circuit, requiring each party to comply with it. Essentially all marital assets were split on a 35%/65% basis [she-35%; he-65%]. Both parties complied with the Agreement. Subsequently, they also divided the net proceeds from the sale of their home in Plantation on that basis.
“I am undoubtedly convinced that the Wife was not forced to sign the Agreement under fraud, duress, undue influence, without adequate disclosure, without adequate legal advice, etc.
“This Wife knew exactly what she was doing and why she was doing it. I do not mean to fault her by making this finding. Nonetheless, the Agreement was not inconsistent with the State of Florida’s family law at that time, as construed by appellate courts, and I am convinced she had competent legal advice.
“Consistent with the Agreement, the decedent also executed a will which has been admitted to probate and excludes the Wife from his probate estate.[2]
“Subsequently, the Wife and decedent apparently resolved their marital problems and moved to Port St. Lucie, where they lived much happier together. Yet, most assets and income continued to [be] segre *1073 gated, even though there were some joint ownership interests established. Clearly, the Wife has totally availed herself of the Agreement’s benefits and now wants more.
“The Wife does not require any of the decedent’s assets or estate income to assist in her support. Nor did she present any evidence to establish her need for maintenance during administration.”
Final Judgment, at 2-3.
Omitted from the court’s factual presentation was a critical provision in the parties’ post nuptial settlement agreement. One of the recitations in the agreement states, unambiguously:
“this Agreement is not made with any intent that either of the parties shall obtain a divorce, and the sole intent thereof is to define and separate properties of the parties, and each of them; * *
The agreement went on to provide unequivocally:
“Each party waives, releases and relinquishes all rights that he or she may now have or may hereafter acquire as the other party’s spouse under the present or future laws of any jurisdiction:
a. To elect to take against any Will or codicil of the other party now or hereafter in force;
b. To share in or make a claim against the other party’s estate; and
c. To act as the personal representative of the other party’s estate.”
Among other things, the agreement also provided that the then current marital home would be sold and that they would then either buy a new home or lease an apartment. If they later decided to purchase a duplex instead of a single-family house, they agreed to rewrite that provision then to deal with such matters as the collection of the rent on the part of the duplex they did not occupy. The agreement further contained a detailed disposition of numerous accounts and items of property, provisions as to health and automobile insurance, personal property and furnishings.
The wife filed dissolution of marriage proceedings sometime in early 1979. There was evidence to the effect that she filed only to protect her interest in marital property and not out of any real purpose to terminate the marriage. The property settlement agreement was signed August 17, 1979. On September 20,1979, the circuit judge assigned to the dissolution case entered an order approving and expressly adopting the settlement agreement as the order of the court. He ordered the parties “to perform and comply with the terms and provisions” of the agreement and retained jurisdiction to enforce the agreement. All other issues raised by the parties were dismissed without prejudice.
The heated dispute in the trial court as to whether the parties ever really reconciled has spilled over into this court, one side contending they did and the other contending they did not. We rely on the trial judge’s resolution of this purely factual issue. He wrote: “the evidence adduced at trial showed that Mr. and Mrs. Duggan did not reconcile until after the Agreement was made and approved by a court in Broward County”— i.e., that “there was a separation and subsequent reconciliation.” He also found that they each fully complied with and performed them agreement to the letter, even though some years later they did open some joint accounts together, and that they remained happy with the arrangement until he died in 1990.
In explaining his final decision after this bitter trial, Judge Kenney held that there was no basis to avoid the agreement on any of the theories posed: fraud, duress, lack of capacity, lack of disclosure, lack of competent legal advice, “or other similar grounds.” Nevertheless, he concluded, section 732.702, Florida Statutes (1991), “does not mean what it says, when applied to reconciled spouses.” He thus held that the subject post nuptial settlement agreement was not an enforceable waiver of an elective share for reconciled spouses.
In denying a later motion for rehearing, he further explained that Weeks v. Weeks, 143 Fla. 686, 197 So. 393 (1940), established that in Florida a later reconciliation will invalidate a property settlement agreement. He cited Delgado v. Cotta de Lopez, 546 So.2d 1075 (Fla. 3d DCA 1989), and Mills v. Mills, 460 *1074 So.2d 545 (Fla. 1st DCA 1984), but found them factually inapplicable. He emphasized that the current facts showed an estrangement and separation, followed by the filing of a divorce proceeding, followed by a settlement agreement while still separated, followed by a reconciliation. Although he said that “this case does not fit neatly into the ‘four-corners’ of any appellate case cited to me,” it is manifest that he felt that the sequence of events was governed by Weeks. We do not agree that Weeks controls, but Judge Kenney was required to follow Delgado ’s holding that it does.
We begin first with the text of the statute which the court felt did not mean what it says:
“732.702 Waiver of right to elect and of other rights.
“(1) The right of election of a surviving spouse, the rights of the surviving spouse as intestate successor or as a pretermitted spouse, and the rights of the surviving spouse to homestead, exempt property, and family allowance, or any of them, may be waived, wholly or partly, before or after marriage, by a written contract, agreement, or waiver, signed by the waiving party. Unless it provides to the contrary, a waiver of ‘all rights’ or equivalent language, in the property or estate of a present or prospective spouse, or a complete property settlement entered into after, or in anticipation of, separation, dissolution of marriage, or divorce, is a waiver of all rights to elective share, intestate share, pretermitted share, homestead property, exempt property, and family allowance by each spouse in the property of the other and a renunciation by each of all benefits that would otherwise pass to either from the other by intestate succession or by the provisions of any will executed before the waiver or property settlement.
“(2) Each spouse shall make a fair disclosure to the other of his or her estate if the agreement, contract, or waiver is executed after marriage. No disclosure shall be required for an agreement, contract, or waiver executed before marriage.
“(3) No consideration other than the execution of the agreement, contract, or waiver shall be necessary to its validity, whether executed before or after mar-riagé.” [e.s.]
In fact, the above text is exactly what was in force in 1979 when the parties made their settlement agreement during the divorce proceedings in Broward County.
It can be readily seen from this text that there is absolutely no explicit provision that a later reconciliation might render unenforceable an agreement that had been made in anticipation of a divorce or dissolution of marriage which never materialized. Nor is there any implication from the entire text that a waiver or agreement, otherwise fitting within the provisions, would lose its effect under the kind of facts presented here. The text is in terms absolute as to waivers or agreements covered. Moreover, some of the statutory terms — e.g., “unless it provides to the contrary” and “or in anticipation of, separation, dissolution of marriage, or divorce”— appear to be consistent with full effectiveness even after a reconciliation. From a literal reading, therefore, although the statute does not mention the subject of reconciliation, it covers this post nuptial property settlement agreement.
Quite apart from the statutory text omitting to make reconciliation a determinable invalidating event, there is the unavoidable problem here as to the specific provision in the parties’ agreement, namely that “this Agreement is not made with any intent that either of the parties shall obtain a divorce, and the sole intent thereof is to define and separate properties of the parties.” It could not be clearer from this contractual text that the very purpose of the agreement was to permit the parties to reconcile! To hold that the later reconciliation had paradoxically abrogated their contract would turn the agreement on itself. The purpose would cannibalize the deed. Certainly there is nothing in the text of section 732.702 remotely suggesting such a “Through The Looking-Glass” result.
Such a holding would equally destroy the statutory stipulation — “unless the parties otherwise agree” — allowing the parties to decide for themselves what will be the sweep of their agreements. Certainly the right of *1075 married people to settle and dispose of all property and monetary issues between themselves is not new. In Miller v. West Palm Beach Atlantic National Bank, 142 Fla. 22, 194 So. 230 (1940), a husband and wife entered into a separation agreement which settled property rights. As required by the agreement, he conveyed certain property to her. Years later she devised the property by will to a trustee for certain trust purposes. The trustee sought to sell the property, but the husband who was in possession refused to permit the sale. When sued he argued that a later reconciliation abrogated the separation agreement. In affirming a decree against him, the supreme court said:
“In many of the cases it is held that where a subsequent reconciliation has been effected the intention of the parties tvill govern on the question of whether or not the agreement is abrogated. In this case, it was certainly not the intention of the wife that the settlement be abrogated because under her will she named the lots deeded to her by her husband as part of the property which was to go to her executor and trustee to be used for the purposes of the trust created in her will.” [e.s.]
194 So. at 232.
Neither does Weeks actually stand for anything so sweeping as to impose an unconsent-ed abrogation of a property settlement agreement on reconciling parties. Actually the issue in Weeks was whether a separation agreement was a bar to alimony/support. The primary holding of the supreme court was that the agreement was unenforceable because the husband failed to make a complete disclosure of all of his property to his wife when they made the agreement. If the contract was unenforceable ab initio because of nondisclosure, of what possible relevance to its validity is the later reconciliation?
Nevertheless, as a secondary basis, the Weeks court made the broad pronouncement, applied by the third district in Delgado, that “a resumption of marital relations for any period of time will render a previous contract and settlement of property rights void * * *_» Weeks, 197 So. at 395; Delgado, 546 So.2d at 1076. The ellipsis in Delgado’s quotation from Weeks, however, should have been included in the analysis. In that omission, the court said: “and that in the absence of divorce a separation contract between husband and wife is [an] abrogation of the marital relation.” Weeks, 197 So. at 395. It has been a long time since Florida viewed separation agreements not followed by divorce as “an abrogation of the marital relation.” Hence the policy foundation for the rule that reconciliation voids the agreement has itself been “abrogated”.
Notwithstanding the elimination of the policy foundations for the reconciliation rule of Weeks, the third district uncritically applied it in Delgado. That case, like the present, involved a surviving spouse arguing that a later reconciliation cancels a previous post nuptial property settlement agreement. Apparently the trial court there found that the marital parties had not themselves agreed to set aside the settlement agreement. Hence, the issue was squarely presented in Delgado as to whether the agreement was voided by operation of law because of the reconciliation. Delgado was thus directly on point, and Judge Kenney was bound to follow it. Weiman v. McHaffie, 448 So.2d 1127 (Fla.1984); and State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976). We simply find the third district’s decision in Delgado unpersuasive and certify our conflict with it.
If section 732.702 does not entirely overrule Weeks, surely it codifies the public policy of this state initially set forth in Miller. That policy authorizes marital parties to control by express agreement how their property will be treated by the law and their surviving spouse at the time of their death, with or without a reconciliation. One is lost for any currently recognized common law policy or principle that would deprive them of that ability. There is nothing in any case cited by the parties or relied on by trial judge that persuades us to do so.
In the end, we are convinced that the short answer to the wife’s contention that she is not bound by the agreement waiving any participation in her husband’s probate estate is found in the agreement itself and in section 732.702. The order allowing her to take *1076 an elective share is in error and must be set aside.
REVERSED.
DELL, C.J., and STONE, J., concur.

 One of the few things everyone agrees upon is that decedent was cheap and even carried around 'how to avoid probate’ books. How ironic, since this classic probate dispute will undoubtedly deplete most of the probate assets.

 By prior Order, I have refused to revoke probate of that will.