659 So.2d 1051 (1995)
James H. COX, Jr., Petitioner,
v.
Kimi Lea COX, Respondent.
No. 84004.
Supreme Court of Florida.
August 24, 1995.
*1052 Carroll L. McCauley of McCauley & Peters, Panama City, for petitioner.
Pamela Dru Sutton of Stone. & Sutton, P.A., Panama City, for respondent.
GRIMES, Chief Justice.
We review Cox v. Cox, 638 So.2d 586, 589 (Fla. 1st DCA 1994), in which the district court of appeal certified the following question to be of great public importance:
DOES RECONCILIATION OR REMARRIAGE VOID A PROPERTY SETTLEMENT AGREEMENT OR SEPARATION AGREEMENT AS A MATTER OF LAW?
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution.
James Cox first married Kimi Cox in 1978. Shortly thereafter, James Cox went on active duty with the military. While stationed on Guam in 1988, the parties experienced marital difficulties. Kimi Cox filed a petition for divorce which James Cox did not contest. The divorce was granted and the parties' settlement agreement ("Guam agreement") was incorporated in the final judgment. The Guam agreement provided for support of the parties' children and for limited support of Kimi Cox while she attended college. The Guam agreement also set forth a detailed distribution of the parties' property, but James Cox's future military retirement benefits were not mentioned. Additionally, the Guam agreement was silent as to the effects, if any, of reconciliation or remarriage on the agreement.
In 1989, the parties remarried. In 1990, James Cox filed for divorce. Prior to trial, the parties entered into a written stipulation resolving all disputed issues save two. At trial, Kimi Cox argued that she was entitled to a portion of James Cox's future military retirement benefits or, alternatively, permanent periodic alimony. Additionally, she requested attorney's fees. The trial court concluded that Kimi Cox was not entitled to an interest in James Cox's future military retirement benefits because the parties were bound by the Guam agreement which did not award Kimi Cox a portion of those benefits. Additionally, the trial court denied her claim for permanent periodic alimony. However, the trial court awarded Kimi Cox three-fourths of her attorney's fees and adopted the parties' written stipulation in its final judgment.
On appeal, Kimi Cox argued that the remarriage rendered the Guam agreement void. The district court of appeal rejected this contention. The court reasoned that *1053 whether Kimi Cox was entitled to a portion of the contested benefits depended upon whether the trial court abused its discretion in failing to set aside the Guam agreement for purposes of an equitable distribution of the parties' marital assets. Cox, 638 So.2d at 588. The appellate court concluded that, under the facts of this case, the trial court had abused its discretion in failing to set aside the Guam agreement and award Kimi Cox a portion of James Cox's future military retirement benefits. Id.
Before this Court, James Cox contends that a prior marital settlement agreement is valid in the absence of evidence that the parties intended it to be abrogated upon reconciliation or remarriage. He acknowledges that his premise should be subject to two caveats. First, either spouse may challenge the validity of a prior marital settlement agreement based upon an assertion of fraud, duress, misrepresentation, undue influence, coercion, concealment, or lack of knowledge in its procurement. Second, it is within a trial court's discretion to set aside a prior marital settlement agreement which is patently unfair. Kimi Cox counters that reconciliation or remarriage abrogates the executory provisions of a prior marital settlement agreement except where it appears that the parties intended otherwise. Kimi Cox concedes, however, that the executed provisions of a prior marital settlement agreement are not affected by reconciliation or remarriage absent a reconveyance or other evidence of an intention to disavow the execution.[1]
At the outset, in fairness to the parties and the district court of appeal, we should recognize that the law on point is somewhat muddled. In Miller v. West Palm Beach Atlantic National Bank, 142 Fla. 22, 194 So. 230 (1940), this Court concluded that where a husband conveyed a house to his wife under a separation agreement, the subsequent reconciliation of the parties did not abrogate the conveyance because it was an executed transfer. However, a few months later we held that a separation agreement which did not provide for the payment of alimony did not preclude a subsequent award of alimony where the parties had temporarily reconciled prior to the divorce. Weeks v. Weeks, 143 Fla. 686, 197 So. 393 (1940). We stated that "[i]t appears to be well settled that reconciliation of husband and wife and resumption of marital relations for any period of time will render a previous contract and settlement of property rights void." Id. at 691, 197 So. 393.
A number of district courts of appeal have uncritically applied this Court's sweeping pronouncement in Weeks. Thomas v. Thomas, 571 So.2d 499 (Fla. 1st DCA 1990) (concluding that under Weeks the parties' prior property settlement agreement should be considered void by virtue of the parties' remarriage to each other and the trial court abused its discretion in holding otherwise); Delgado v. Cotta de Lopez, 546 So.2d 1075 (Fla. 3d DCA 1989) (concluding that the parties' remarriage to each other rendered the elective-share waiver provision of a prior property settlement agreement unenforceable); Weston v. Weston, 483 So.2d 822 (Fla. 3d DCA 1986) (concluding that a wife was not entitled to continue to receive child support under the terms of a prior property settlement agreement after the wife remarried her former husband); Zullo v. Zullo, 317 So.2d 453 (Fla. 3d DCA 1975), cert. discharged, 342 So.2d 77 (Fla. 1977) (concluding that a release and quit-claim deed to a purchase money mortgage and note executed as part of a prior property settlement agreement was rendered invalid by the reconciliation of the parties to that agreement); Carter v. Carter, 309 So.2d 625 (Fla. 3d DCA 1975) (recognizing that a prior property settlement agreement was rendered void by the remarriage of the parties to each other). Still other district courts of appeal have questioned the continued vitality of Weeks. In re Estate of Duggan, 639 So.2d 1071, 1075 (Fla. 4th DCA 1994) (concluding that "the policy foundation for the rule that reconciliation voids the [prior marital settlement] agreement has itself been `abrogated'"); Mills v. Mills, 460 So.2d 545 (Fla. 1st DCA 1984) (concluding that reconciliation does not, as a matter of law, *1054 abrogate all settlement agreements).[2]
Despite the confusion, we believe that Weeks and Miller can be harmonized into workable principles. While Weeks announced a rule that reconciliations will void marital settlement agreements, it did so in the context of considering the viability of an executory provision of such an agreement. There was no indication that the court intended to recede from the holding of Miller that reconciliations do not abrogate those portions of a settlement agreement which have been carried out.
Obviously, the parties could agree to a different result. However, we are reluctant to accept the rationale of the court below that the trial judge should try to divine the intent of persons who were unlikely to have had any intent whatsoever at the time. Ordinarily, parties in the throes of a dissolution who enter into a settlement agreement are not contemplating reconciliation or remarriage. By the same token, parties who have decided to reconcile or remarry cannot be expected to be thinking about a subsequent dissolution.
Thus, we hold that reconciliation or remarriage abrogates the executory provisions of a prior marital settlement agreement unless there is an explicit statement in the agreement that the parties intended otherwise. However, we hold that the executed provisions of a prior marital settlement agreement are not affected by reconciliation or remarriage absent a reconveyance or a new written agreement to the contrary.[3]
Most of our sister states also have adopted the view that reconciliation or remarriage abrogates the executory provisions in a prior marital settlement agreement but does not affect those provisions which have been executed. See, e.g., In re Marriage of Reeser, 635 P.2d 930 (Colo.Ct.App. 1981); In re Marriage of Parks, 258 Ill. App.3d 479, 196 Ill. Dec. 574, 630 N.E.2d 509 (1994); Peterson v. Peterson, 583 S.W.2d 707 (Ky. Ct. App. 1979); Brazina v. Brazina, 233 N.J. Super. 145, 558 A.2d 69 (Ct.Ch.Div. 1989); Schultz v. Schultz, 107 N.C. App. 366, 420 S.E.2d 186 (1992), review denied, 333 N.C. 347, 426 S.E.2d 710 (1993); Kaminsky v. Kaminsky, 178 W. Va. 786, 364 S.E.2d 799 (1987); see also 1 Alexander Lindey & Louis I. Parley, Lindey on Separation Agreements and Antenuptial Contracts § 9A.01 (1995). Contra Smith v. Smith, 19 Va. App. 155, 449 S.E.2d 506 (1994). See also 2 Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 19.7 (2d ed. 1987).
We also believe that public policy militates in favor of our decision in this case. As explained in Brazina, 558 A.2d at 72 (citation omitted):
The philosophy underpinning the theory of abrogation is that, since the policy of courts is to encourage and strengthen the bond of marriage, it is the presumed intent of the parties at the time of the reconciliation to resume the marital relationship in all respects and abrogate any prior agreements restricting or inhibiting the rights of one of the spouses, unless they indicate otherwise at the time of the reconciliation.
... However, it is recognized that the parties, as well as third parties, should have the right to rely upon the validity of executed portions of the property settlement agreement. To hold otherwise could create havoc not only for the parties themselves but for third parties as well who would be reluctant to contract with a separated but undivorced person for fear that a reconciliation may have occurred which could have created in the other spouse a legal interest in an asset even though that spouse relinquished all rights in that asset in an earlier property settlement agreement.
We find that James Cox's future military retirement benefits are, by definition, *1055 executory. The Guam agreement did not expressly provide that its executory provisions would survive reconciliation or remarriage. Consequently, we conclude that the executory provisions of the Guam agreement were abrogated by the Coxes' remarriage and that James Cox's future military retirement benefits should have been treated as a marital asset for purposes of equitable distribution or considered as a source of payment of alimony.[4]See Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986); Zipperer v. Zipperer, 508 So.2d 551 (Fla. 1st DCA 1987). Accordingly, we approve the result reached by the district court of appeal in this case, but disapprove of its reasoning.[5] Moreover, we disapprove of other decisions of the district courts of appeal to the extent that they conflict with this decision.
It is so ordered.
OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Both parties advance arguments in the alternative which need not detain us.
[2] Though the courts have disagreed upon the substance of the rule, none have suggested that there should be different rules applied to remarriages as contrasted to reconciliations.
[3] We note, parenthetically, that a district court of appeal has already concluded that "[a]ppellant correctly relies upon Miller v. West Palm Beach Atlantic National Bank, 142 Fla. 22, 194 So. 230, 231 (1940), for the rule that reconciliation rescinds executory contracts, but not contracts already executed." Gerard v. Gerard, 636 So.2d 849, 850 (Fla. 1st DCA 1994).
[4] Of course, the unexecuted portions of the support provisions were also abrogated.
[5] In passing, we note that the trial court declined to award Kimi Cox permanent alimony "[d]ue [in part] to the short duration of the marriage." During the parties' first marriage, James Cox served on active duty with the military for almost nine years. Additionally, James Cox served on active duty throughout the parties' second marriage which lasted less than two years. In view of the short interval between the two marriages, we believe that it would be inequitable to treat the Coxes' marriage as lasting less than two years. See Thomas v. Thomas, 571 So.2d 499 (Fla. 1st DCA 1990).