696 So.2d 844 (1997)
Elena Abeta BAIRD, Appellant,
v.
George Richard BAIRD, Appellee.
No. 95-02683.
District Court of Appeal of Florida, Second District.
April 2, 1997.
*845 Ernest M. Jones, Jr., Lakeland, and Edward M. Brennan of Levine, Hirsch & Segall, P.A., Tampa, for Appellant.
William C. Hamm, Jr. of Smith & Hamm, P.A., Lake Alfred, for Appellee.
PADGETT, J. ROGERS, Associate Judge.
Elena Abeta Baird challenges the final judgment's equitable distribution of the marital home and shares of stock and the repayment schedule for alimony arrearages. We reverse the lower court's inequitable division of stock and remand for the court to make an even distribution, but affirm its award of a fifty percent share in the marital home. Finally, we reverse the alimony arrearage repayment provision and remand for the lower court's further consideration of the former husband's ability to make more substantial payments.
The parties initially married in January 1976, divorced in June 1984 and remarried the next month. The first divorce resulted in a final judgment, but the parties stipulated in March 1987 to vacate the second final judgment entered in February 1987. They separated for the last time in March 1993, and the ensuing divorce resulted in the final judgment from which this appeal arises.
Mr. Baird worked for United Parcel Service (UPS) and acquired company stock. When the parties were first married, he owned 597 shares of the stock in an account titled in his name alone. He continued to *846 receive UPS stock, and in December 1981 the account contained 1,404 shares. At about that time the parties established a jointly-titled stock account into which Mr. Baird transferred 836 shares of the UPS stock from his solely titled account. In February 1982 that account acquired 184 shares of UPS stock. Then, in November of that year the stock split four-for-one, bringing the total in the solely-titled account to 3,008 shares. The account continued to acquire stock thereafter. In January 1984 it held 3,521 shares. That month, UPS issued "OPL" stock in an even exchange for the UPS stock. In January 1984 the joint stock account contained 1,516 shares of UPS stock, which were evenly exchanged for OPL stock.
The June 1984 divorce judgment awarded Mrs. Baird half of the stock, but because UPS would not allow her to hold the shares, the court ordered Mr. Baird to sell the shares. The court allowed him thirty days to sell the shares or otherwise do what was necessary to provide liquidated funds to the former wife equal to the value of the stock at the time of the final judgment. Mr. Baird refused to transfer the stock. The parties shortly remarried, borrowed $20,000.00 from Sun Bank secured by more than 1,300 shares of the stock and spent it on a car and various bills. By the time the parties separated for the third and final time in March 1993, Mr. Baird's original account contained 2,850 shares of UPS stock and 1,512 shares of OPL stock. The jointly-titled account held 973 shares of UPS stock and 608 shares of OPL stock. Over the course of the ensuing litigation stock was ordered sold from the accounts for various purposes including the payment of an IRS obligation, satisfaction of a judgment lien and reinstatement of the mortgage on the marital home. By the conclusion of the proceedings the two accounts contained 2,713 shares of UPS stock and 1,060 shares of OPL stock.
In her pleadings Mrs. Baird asserted that she was entitled to the 2,562 shares awarded her in the June 1984 judgment, plus additional shares derived from a subsequent stock split. In the alternative, she contended for an even division of the existing stock. At trial Mr. Baird presented the testimony of an accountant who, extrapolating from Mr. Baird's original premarital stock, quantified each party's stock interests as of their March 1993 separation. According to the accountant, at the time of the separation Mr. Baird held 2,213 shares of UPS stock and 1,210 OPL shares in his solely titled account, and Mrs. Baird held 637 UPS shares and 302 OPL shares. In the jointly-titled account, Mr. Baird had 487 UPS shares and Mrs. Baird had 486; they each held 304 OPL shares in that account.
The court accepted the accountant's approach and awarded Mr. Baird 2,107 shares, or 77.65 per cent of the UPS stock in his solely-titled account, and 709 shares, or 80 per cent of the OPL stock in that account. He awarded Mrs. Baird the remainder and evenly divided the 174 OPL shares in the jointly-titled account.
The judge indicated at the start of the final hearing that he would abide by the 1984 judgment's 55.5 per cent award in the marital home to Mrs. Baird, but that he would divide the stock anew, assuming that the parties had been continuously married since 1976. The judge, however, ruled that the parties were to own the house as equal tenants in common pending its sale.
The appellant disputes the former husband's claim to a nonmarital interest in the stock. First, she argues that the 1984 final judgment determined her entitlement to the stock. Secondly, she claims that Mr. Baird cannot claim a nonmarital interest in the stock because he had commingled his premarital shares in the same account in which marital ones were held. When divorced parties remarry each other and then divorce again, absent an agreement to the contrary, the executed provisions of their first marital settlement agreement remain in force, whereas the executory provisions, involving such things as ongoing support entitlements, do not. Cox v. Cox, 659 So.2d 1051 (Fla.1995).
We do not agree with the former wife's contention that her entitlement to the stock was executed in the sense that it was determined with finality by the court. There was no self-executing provision in the final *847 agreement. Although Mr. Baird allegedly refused to transfer the stock, the parties remarried the next month. Mrs. Baird made no attempt to compel him to transfer the stock for two years until 1986 when the parties began to litigate the marital dissolution which culminated in the February 1987 final judgment. Where property settlement provisions have been fully executed prior to reconciliation, they are presumed to be valid and binding. See, e.g., In re Marriage of Reeser, 635 P.2d 930 (Colo.App.1981)(cited in Cox, 659 So.2d 1051). The stock entitlement here was executory, and, therefore, did not remain in force upon reconciliation.
We do, however, agree that the commingling of the stock accounts defeated the separate character of the shares. Mr. Baird commingled his stock in the jointly-titled account, periodically sold shares from the solely-titled account for living expenses and hypothecated over 1,300 shares as security for a $20,000.00 marital debt. They lived in part off of dividends and proceeds from the sale of that stock during a period from 1985 to 1990 during which neither worked full-time. During the litigation, the court ordered that stock be sold to pay an IRS obligation, satisfy a judgment lien and reinstate the mortgage on the marital home. The accountant conceded that he could not trace specific shares through the various sales and transfers. The stock lost its separate character by such commingling and hypothecation. See Robinson v. Robinson, 655 So.2d 123 (Fla. 3d DCA), review denied, 663 So.2d 631 (Fla.1995); Adams v. Adams, 604 So.2d 494 (Fla. 3d DCA 1992), review denied, 614 So.2d 502 (Fla.1993).
The 1984 final judgment awarded the former wife a 55 per cent interest in the marital home, but it contained no self-executing provision. No quitclaim deed was ever executed. Similar to the stock issue, the former wife's entitlement to the greater interest was merely executory. The judge began to make a preliminary ruling that he would abide by the 1984 final judgment's award as to her interest in the house, but during the same discussion between the judge and counsel, the judge stated that they were back to "square one" on the house. The judge offered the former wife's counsel a recess to reevaluate their strategy but counsel assured the judge that he was prepared to go forward. The former wife adduced no evidence to support a claim of her special equity in the marital home. The burden to show a special equity is upon the party claiming it. § 61.075(5)(a), Fla.Stat. (1995). Entireties real estate is presumed to be marital property. Robertson v. Robertson, 593 So.2d 491, 494 (Fla.1991). We find no abuse of discretion concerning the even distribution of the marital home.
We, however, reverse the trial court's order that the former husband repay the $3,000.00 alimony arrearage at the rate of $25.00 per month. The trial court found that the parties had created a financial mess for themselves, that they had incurred large attorney's fees and had insufficient assets and income to pay them. The court's interim support order required the former husband to pay $250.00 per month in alimony. Its final judgment awarded her $100.00 per month. The former husband failed to make alimony payments for many months. We do not view a ten-year repayment schedule as reasonable under the circumstances. The right to alimony payments is vested and not subject to reduction absent compelling equities in the party obligated to make the payments. Filaretou v. Filaretou, 652 So.2d 952 (Fla. 2d DCA 1995). The court's justification does not specify compelling equities in the former husband's situation alone; this financial hardship is more than shared by the former wife, who also suffers physical ailments. Because we conclude that no reasonable person would take the view adopted by the trial court, we hold that the order fails to satisfy the test of reasonableness, and, therefore, the court abused its discretion. See Canakaris v. Canakaris, 382 So.2d 1197, 1202-03 (Fla.1980).
Reversed in part, affirmed in part and remanded for further proceedings consistent with the foregoing opinion.
PATTERSON, A.C.J., and WHATLEY, J., concur.