829 So.2d 302 (2002)
Jeanine MOSS, Appellant,
v.
Oscar MOSS, Appellee.
No. 5D01-1374.
District Court of Appeal of Florida, Fifth District.
October 25, 2002.
Gregory Crutchfield of Crutchfield & Saxon, P.A., Melbourne, for Appellant.
Mike Krasny of Krasny & Dettmer, P.A., Melbourne, for Appellee.
THOMPSON, C.J.
Jeanine Moss ("former wife") appeals the trial court's ruling in a final judgment of dissolution of marriage that a portion of Oscar Moss's ("former husband") stock is non-marital. The former wife also contends that the trial court erred in not finding that the former husband fraudulently and intentionally dissipated the marital assets, and further argues that the trial court erred in not awarding her attorney's fees. We disagree and affirm the final judgment.
The former wife and the former husband were married for seventeen years. Before the marriage, the former husband worked for Eli Lilly Company for twenty-eight years. He retired seven years after marrying the former wife. The former husband received seven stock options from Eli Lilly, three were granted before the marriage and four were granted during his marriage, but all seven options were exercised during the marriage. The former husband kept his stock in a separate account in his name, and the former wife did not have access to it or make decisions on the account. The former husband testified that the first option was exercised by way *303 of a loan during the marriage. The second, third, fourth, and fifth options were exercised via stock swap. The sixth option was exercised by payment in cash, and the seventh was exercised by a stock swap.
The former husband testified that he had given another 920 shares to the former wife and had just under 17,000 shares remaining. However, the former wife's expert, Bill Jackson, testified that the former husband should have had about 37,000 shares, which meant that the former husband had 20,000 shares remaining for which he had not accounted. Jackson testified that it appeared that former husband received performance awards in the form of stock which would account for the missing shares. The trial court asked for clarification on how the former husband could continue to receive performance awards when he was retired. Jackson testified that he did not have documentation of the former husband's performance awards, but because the former husband's tax returns appeared to show an occurrence similar to what occurred when Eli Lilly gave performance awards in the form of stock, Jackson concluded that the former husband received the performance awards. Also, relying on the handwriting on a document, the authorship of which was unknown to Jackson, he testified that Eli Lilly did not provide statements prior to 1986.
The former husband's expert witness, Catherine Key, testified that Jackson's reports were faulty because Jackson was not adjusting for splits when sales occurred. Key also testified that according to her data, the former husband should have had just under 17,000 shares of stock remaining, as the former husband testified.
The trial court found that the former husband had not attempted to fraudulently and intentionally dissipate the martial assets, and that there were no unaccounted for shares of stock. The trial court found that of the 17,919 shares remaining (16,999 shares that the former husband had, plus the 920 that the former husband had given to the former wife), 4,820 were marital and the remaining shares were non-marital. The former wife was awarded $322,360 worth of assets, and the former husband was awarded $303,000 worth of assets. As for the former wife's attorney's fees, the trial court stated, "I believe there was evidence presented that the husband had already contributed to her prior attorney's fees. Based on the distribution of assets, I will require that she pay her own attorney's fees. And the fact that she is getting assets from the marriage and she has the ability to pay for her attorney from her assets, I will decline to award additional fees."
Assets acquired before marriage are not marital assets and remain the property of the owner spouse in the absence of evidence of a gift or conveyance of the assets to the owner's spouse. See Zaborowski v. Zaborowski, 547 So.2d 1296 (Fla. 5th DCA 1989) (citing Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980) and Horton v. Horton, 433 So.2d 1386 (Fla. 5th DCA 1983)). In Zaborowski, the husband contributed to his pension plan for 19 years prior to his marriage, but the trial court distributed his wife half of the pension plan. Id. at 1297. This court held that the 19 years of premarital contributions was not a marital asset absent a showing that former husband gave or assigned former wife any portion. Id. This court also disagreed with the holding in Reyher v. Reyher, 495 So.2d 797 (Fla. 2d DCA 1986) requiring that the owner prove the value of premarital contributions to exclude such contributions from the estate. Instead, this court placed the burden on the claiming spouse. Id. at 1298.
In the instant case, the former husband worked for Eli Lilly for 28 years before marrying former wife. He kept his shares *304 in an account in his name only, and the former wife testified that she did not have access to the stock account. The former husband testified that the marital shares were used for marital purposes such as paying off the mortgage and paying taxes. The trial court determined that the premarital shares exercised with non-marital funds were non-marital. Under Zaborowski, the trial court did not err in awarding husband the shares.
The former wife cites a number of cases to support her contention that the shares should have been equally split. See Williams v. Williams, 686 So.2d 805 (Fla. 4th DCA 1997); see also Archer v. Archer, 712 So.2d 1198(Fla. 5th DCA 1998) (holding that when a joint account originally established with non-marital property is intermingled with marital property so that property becomes non-traceable, such property is categorized as martial); see also Baird v. Baird, 696 So.2d 844 (Fla. 2nd DCA 1997) (holding that stock lost its separate character by commingling and hypothecation where it was commingled in a jointly titled account for living expenses, and the accountant could not trace specific shares through various sales and transfers). However, these cases are distinguishable.
In the instant case, the former husband kept all his shares in an account in his name to which the former wife had no access; whereas, in the cases cited by the former wife, assets were co-mingled and put in joint names or accounts. Also, in the instant case, the trial court determined that the stock options that were granted before the marriage and purchased with non-marital funds were non-marital. In contrast, in the cases cited by the former wife, the assets were so inextricably commingled that the claimed non-marital assets were no longer separate in character.
The former wife also contends that she demonstrated that the former husband had depleted the martial estate to the detriment of the former wife because the former wife's expert determined that the former husband should have had 37,659 shares of stock remaining instead of 16,999 shares. The testimony of the former wife's expert was contrary to that of the former husband's expert, who testified that the former husband had only 16,999 shares.
In Adkins v. Adkins, 650 So.2d 61, 62 (Fla. 3d DCA 1994), the former wife appealed the final judgment of dissolution and faulted the former husband's accountant's testimony, which the trial court accepted rather than the contrary testimony of the former wife and the former wife's accountant. The district court held:
We are of course, forbidden by law from retrying the case on appeal because it is for the trial court who heard the testimony below, not this court, to evaluate and weigh the credibility of witness testimony and other evidence adduced at trial. So long as there is sufficient evidence in the record to support the trial court's findings, we are required to affirm the final judgment appealed fromeven though there may be contrary evidence and reasonable inferences therefrom to support different findings which are more to the appellant's liking. Beyond that, in a marriage dissolution proceeding in particular, the trial court possesses broad, but not unlimited, discretionary power to do equity between the parties and has various remedies to accomplish this purpose. So long as reasonable people may differ as to the propriety of the trial court's discretionary rulings, the appellate court may not disturb such rulings.
Id. at 62-63 (citations omitted).
In the instant case, the trial court rejected Jackson's testimony and found that *305 the former husband had only 16,999 shares as he and his expert testified. There is no basis for this court to undermine that finding.
Finally, the former wife argues that the court abused its discretion in denying her request for attorney's fees because the former husband has a much greater ability to pay for her counsel. Section 61.16, Florida Statutes, is intended to ensure that both parties have a similar ability to secure competent legal counsel. See Canakaris v. Canakaris, 382 So.2d 1197, 1205 (Fla.1980). In Nelson v. Nelson, 795 So.2d 977 (Fla. 5th DCA 2001), this court held that the trial court did not abuse its discretion in denying the wife $20,000 for additional attorney's fees. Id. at 987. This court pointed out that the former wife received one million dollars in equitable distribution, and was owed an additional one million dollars. Id; see also Morris v. Morris, 743 So.2d 81 (Fla. 5th DCA 1999) (holding that neither party was left in a position where he or she could not afford his or her own attorney's fees). In the instant case, the former wife received over $19,000 more than the former husband in the equitable distribution, and therefore had the ability to pay her own attorney's fees. Therefore, the trial court did not err in denying the former wife attorney's fees.
AFFIRMED.
SHARP, W. and PALMER, JJ., concur.