DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VANESSA LEA WILLIAMS,**
Appellant/Cross-Appellee,

v.

**ERIC ALLEN WILLIAMS,**
Appellee/Cross-Appellant.

No. 4D2025-0728

[June 3, 2026]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Anastasia M. Norman, Judge; L.T. Case No. 562023DR000864AXXXHC.

Chet Eliot Weinbaum of The Law Office of Chet E. Weinbaum, P.A., Fort Pierce, for appellant/cross-appellee.

Troy Klein, West Palm Beach, for appellee/cross-appellant.

GROSS, J.

We address multiple issues raised by the parties in this appeal and cross-appeal from an amended final judgment of dissolution of marriage entered after a trial. We affirm the trial court's determination that a residence titled in the wife's name was marital property subject to equitable distribution. We reverse four aspects of the final judgment as set forth below.

### Facts Regarding the Marital Home and the Informal Mortgage

The parties married in 1997. Their only child was emancipated prior to this proceeding.

In 2011, during the marriage, the parties jointly purchased a home from Jacqueline Leavitt. The wife worked for Leavitt "for many years." In exchange for the home, Leavitt received an "informal mortgage" of $75,000. The debt was memorialized by a Deed of Trust Note signed by the husband and the wife in 2011. Entered into evidence at trial, the Note required the

parties to pay Leavitt and her husband $75,000 plus 4% interest in 20 annual installments of $5,400 beginning on April 1, 2012. However, both parties testified that no payment had ever been made to Leavitt on this loan.

The home was worth about $430,000 at the time of the 2024 trial.

### Prior Divorce Action: Quitclaim Deed Transfer to Wife, Marital Settlement Agreement, and Dismissal Due to Reconciliation

The parties' first divorce action began in 2015 but was dismissed in 2017 due to the parties' reconciliation.

In April 2016, during the pendency of the first divorce action, the husband and wife jointly executed a quitclaim deed conveying the home to the wife alone. The parties later executed a corrective quitclaim deed to correct the property's legal description.

During a 2016 mediation, the wife's attorney informed Leavitt about the divorce action and where to send a demand letter for the $75,000 debt. This discussion prompted Leavitt to send the parties a demand letter for repayment of the note.

In January 2017, the parties entered into a Marital Settlement Agreement ("MSA"), which was approved by the circuit court. The MSA stated that the home "is the sole property belonging to Wife." The MSA further provided that, "[u]pon the sale of said real property," the net proceeds would be distributed for the satisfaction of mortgages; if any balance existed, then $10,000 would be paid to the husband, with the remainder of any proceeds from the sale going to the wife.

The parties later reconciled and filed a joint voluntary stipulation of dismissal, bringing the first divorce action to a close.

After the reconciliation, the parties never took any action to invalidate the 2016 quitclaim deed.

### This Divorce Action

*The Pleadings*

In 2023, the husband filed a petition for dissolution of marriage, which included a request for equitable distribution of the parties' marital assets

and liabilities. The wife's answer sought no affirmative relief other than an order dissolving the marriage and an award of attorney's fees and costs.

*Joint Pretrial Statement*

In a joint pretrial statement, the parties agreed that no support arrearages existed. The parties also listed the relief sought by each side.

The husband sought (1) dissolution of marriage, (2) equitable distribution of marital assets and liabilities after setting apart nonmarital assets and liabilities, and (3) an award of attorney's fees and costs if the wife engaged in excessive or vexatious litigation.

The wife sought (1) dissolution of marriage, and (2) the award of the "former marital home exclusively to the [w]ife" on the basis that the husband had "quit-claimed his interest on April 21, 2016."

*Trial*

At the trial, the wife's counsel conceded that the wife was "not asking for enforcement" of the MSA. However, over the husband's repeated objections that the MSA was irrelevant and outside the scope of the pleadings, the trial court took judicial notice of the prior divorce action, including the MSA. The court also allowed testimony regarding the terms of the MSA over the husband's objections.

During trial, the wife raised the issue of the alleged debt to Leavitt for $75,000 plus interest, along with property taxes that Leavitt had paid. The husband contested the enforceability of this debt.

The wife testified that the husband had quitclaimed the home to her in 2016 because he did not want to make any payments toward the debt owed to Leavitt. The wife also testified that the MSA contemplated that she would sell the house whenever she felt like selling it.

The husband's financial affidavit was admitted into evidence at trial, but the wife's was not.

In closing argument, the wife's attorney argued that the quitclaim deed "stood on its own" and was "not dependent upon the original marital settlement agreement or anything."

*Amended Final Judgment*

3

In an amended final judgment, the trial court ruled that the home was a marital asset.

The court calculated the balance of the mortgage owed to Leavitt as $120,077.40. The court also determined that the parties owed Leavitt $7,500 for property taxes. The court assigned the home and its associated debt to the wife.

Based on the court's equitable distribution scheme, the court determined that the wife owed the husband an equalizing payment of $146,300.80, less retroactive child support of $5,779.75, for a total equalizing payment of $140,521.05.

The wife appealed and the husband cross-appealed the amended final judgment.

### *The Trial Court Did Not Err in Classifying the Home as a Marital Asset*

The wife argues that because the quitclaim deed was signed after the dissolution petition was filed in the first divorce action, the home should have been classified as her nonmarital asset. The wife contends that "because the change in title ownership and interest was to occur immediately as opposed to when [the husband] received the '$10,000 at time of sale,'" the MSA provision at issue "is properly classified as an executed provision versus an executory provision and it is likewise binding on [the] parties even after subsequent reconciliation."

*Discussion*

"Marital assets" include "[a]ssets acquired . . . during the marriage, individually by either spouse or jointly by them." § 61.075(6)(a)1.a., Fla. Stat. (2024). "Marital assets" also include "[i]nterspousal gifts during the marriage." § 61.075(6)(a)1.d., Fla. Stat. (2024); *Marshall-Beasley v. Beasley,* 77 So. 3d 751, 758 (Fla. 4th DCA 2011). By contrast, "nonmarital assets" include assets "excluded from marital assets and liabilities by valid written agreement of the parties[.]" § 61.075(6)(b)4., Fla. Stat. (2024).

"The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage." § 61.075(7), Fla. Stat. (2024). "This section provides a bright line rule for setting the date to be used for

4

classifying marital assets and liabilities for the purpose of equitable distribution." *Schmitz v. Schmitz,* 950 So. 2d 462, 463 (Fla. 4th DCA 2007). "Accordingly, a trial court may not classify an asset purchased after the filing of the petition as marital." *Knott v. Knott,* 395 So. 3d 1147, 1152 (Fla. 6th DCA 2024). "This is true even if marital funds are used to purchase the post-petition asset." *Id.*

The statutory cut-off date applies only to dissolution actions that are prosecuted to a final judgment. "When an action is dismissed without a final adjudication on the merits, the parties are left as if the suit had never been filed." *Deutsche Bank Tr. Co. Americas v. Beauvais,* 188 So. 3d 938, 946 (Fla. 3d DCA 2016) (cleaned up); *accord Lohman v. Carnahan,* 963 So. 2d 985, 988 (Fla. 4th DCA 2007) (explaining that joint voluntary dismissal of dissolution action left the parties "as if the action had never been brought"), *abrogated on other grounds by Simmonds v. Perkins,* 247 So. 3d 397 (Fla. 2018).

Still, "reconciliations do not abrogate those portions of a settlement agreement which have been carried out." *Cox v. Cox,* 659 So. 2d 1051, 1054 (Fla. 1995). In *Cox,* the Florida Supreme Court held that "reconciliation or remarriage abrogates the executory provisions of a prior marital settlement agreement unless there is an explicit statement in the agreement that the parties intended otherwise." *Id.* But "the executed provisions of a prior marital settlement agreement are not affected by reconciliation or remarriage absent a reconveyance or a new written agreement to the contrary." *Id.*

Applying the above law to this case, we conclude that the dismissal of the first divorce action left the parties as though that action had never been brought. We reject the wife's argument that the execution of the 2016 quitclaim deed after the filing of the 2015 divorce requires that the home be classified as a nonmarital asset. The rule from *Knott*—that a trial court may not classify an asset acquired after the filing of a dissolution petition as marital—does not apply to a dissolution petition that was voluntarily dismissed and never resulted in a final judgment determining which assets and liabilities should be classified as marital.

Instead, the applicable cut-off date here is the "date of the filing of a petition for dissolution of marriage" in the second dissolution action in 2023. Therefore, because the husband executed the quitclaim deed during the intact marriage, the home falls within the definition of a "marital asset."

The transfer of the husband's interest in the home through the quitclaim deed constituted either an asset acquired by the wife during the marriage under section 61.075(6)(a)1.a. or an interspousal gift during the marriage under 61.075(6)(a)1.d. Either way, the home is properly characterized as a marital asset. *See Bardino v. Bardino*, 670 So. 2d 183 (Fla. 3d DCA 1996). In *Bardino*, the Third District observed:

> Whether the husband gifted his interest in the home to the wife as the result of an informal settlement agreement, as the wife maintained, or the home was a marital asset transferred with the understanding that the proceeds from the home's sale would be shared by the spouses, as argued by the husband, because the transfer took place during the marriage, under the instant facts, the home would be characterized as a marital asset under section 61.075(5)(a).

*Id.* at 183.

The wife failed to preserve her argument on appeal that the MSA's provision governing the home "is properly classified as an executed provision versus an executory provision and it is likewise binding on [the] parties even after subsequent reconciliation." The only way the home could be considered a nonmarital asset would be if the parties had entered a "valid written agreement" to exclude the home from the marital estate. *See* § 61.075(6)(b)4., Fla. Stat. (2024). Neither the pleadings nor the joint pretrial statement included any request by the wife to enforce the MSA. At trial, the wife's attorney expressly waived any argument that the MSA should be enforced. Her counsel stated that "we're not asking for enforcement of the agreement," and reiterated this position multiple times.

"In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985).[1]

---

[1] The wife's suggestion that the terms of the MSA were tried by consent is without merit. While the husband's counsel did question the wife about the MSA, this occurred only after the trial court had overruled the husband's repeated objections to the admissibility of testimony concerning the MSA. *See LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So. 2d 881, 887 (Fla. 4th DCA 2003) ("An issue is tried by consent when there is no objection to the introduction of evidence on that issue.").

Because the quitclaim deed was executed during a dismissed dissolution proceeding and the wife waived any claim to enforce the MSA, the trial court did not err in classifying the home as a marital asset.[2]

### *The Trial Court Erroneously Allocated the Parties' Credit Card Debt in a Manner Inconsistent with the Parties' Stipulation and the Court's Oral Pronouncement*

After both parties rested at trial, they agreed that they wanted "to keep whatever debts they have in their own name," and the trial court orally pronounced "I'm not equitably dividing any debts."

Yet, in the amended final judgment, the trial court equitably distributed the parties' credit card and other debts.

"A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court. Such a stipulation must not be disturbed unless found to be ambiguous or in need of clarification, modification or interpretation." *Steiner v. Steiner*, 638 So. 2d 174, 175 (Fla. 1st DCA 1994) (cleaned up). Also, "[w]hen a trial court's written order is inconsistent with its earlier oral pronouncement, the oral pronouncement generally controls and the written order must be reversed." *Johansson v. Johansson*, 348 So. 3d 1153, 1155 (Fla. 4th DCA 2022).

We therefore reverse and remand for the trial court to eliminate the debts—other than the Leavitt mortgage—from the equitable distribution scheme.

### *The Amended Final Judgment Made Inconsistent Findings as to the Value of the Marital Furnishings When Calculating the Equalization Payment*

In paragraph 15 of the amended final judgment, the trial court listed the parties' marital assets, including a "Bed frame, box spring, mattress, topper sheet" valued at $2,000 and the "Remainder of furnishings in home" valued at $30,000, and many other specific items of personal property.

---

[2] We affirm the trial court's decision to make the wife responsible for the Leavitt note without further comment, concluding that there was no abuse of discretion.

7

But, in the equitable distribution scheme set forth in paragraph B of the decretal portion of the amended final judgment, the trial court did not include the "Remainder of furnishings" of $30,000. The equitable distribution scheme did include the "Bed frame, box spring, mattress, topper sheet" valued at $2,000.

"A dissolution judgment that is internally inconsistent should be reversed and remanded for correction or clarification." *Weymouth v. Weymouth*, 87 So. 3d 30, 36 (Fla. 4th DCA 2012). "While factual findings by the circuit court are afforded deference on review, scrivener's errors and miscalculations must be corrected on remand." *Martin v. Martin*, 923 So. 2d 1236, 1239 (Fla. 1st DCA 2006).

The amended final judgment was internally inconsistent regarding the valuation of the marital furniture that was to remain in the home. The husband testified that the marital furniture was worth $30,000, but this figure was based on the bedroom set alone being worth $30,000. By contrast, the wife testified that the bedroom set was discontinued, damaged, and worth $2,000 "at most," and that the only other furniture she was keeping was an old couch. Paragraph 15 of the judgment appears to credit both parties' testimony when it values a "Bed frame, box spring, mattress, topper sheet" at $2,000, while also valuing the "Remainder of furnishings in home" at $30,000.

A further inconsistency exists in the amended final judgment because, despite valuing the "Remainder of furnishings in home" at $30,000 in paragraph 15, the decretal portion of the judgment does not include this $30,000 figure when distributing the marital estate and calculating the equalization payment. By including only the $2,000 figure in the equitable distribution scheme, the court may have intended to adopt the wife's figure, but it is impossible to say for sure. Although the trial court clearly intended an equal distribution of the marital estate, the amended final judgment is unclear as to how the court intended to value the marital furniture.

Contrary to the husband's argument, the transcript does not reflect that the trial court made a final oral pronouncement accepting the husband's $30,000 figure.

On this issue, we reverse and remand to the trial court to clarify its finding as to the value of marital furniture and then equitably distribute the marital estate consistent with that finding.

8

### The Trial Court Violated the Husband's Right to Due Process by Including Child Support Arrearages in the Amended Final Judgment

The issue of child support was not raised in the pleadings, in the parties' joint pretrial statement (which asserted that no support arrearages existed), or at the final hearing. Nonetheless, the trial court sua sponte included child support arrearages in the amended final judgment as a superseding support order:

> A Final Administrative Support Order was entered on April 15, 2016 in Case Number 2016DR000299 establishing the Husband's child support obligation of $388.05 per month and $77.61 per month toward the retroactive support of $3,839.50 commencing on May 1, 2016. The child which is the subject of that order emancipated on September 2, 2016 and there is no longer an ongoing support obligation. However, the Husband still owes arrears of $5,779.75 as of November 7, 2024. This Final Order constitutes a superseding order pursuant to Section 409.2563(10)(c), Florida Statutes and includes all arrears due in Case Number 2016DR000299, which case shall be consolidated into this case. The Husband shall be responsible to pay all arrears due as previously established in Case Number 2016DR000299.

In addition, the final judgment imposed a $5,779.75 downward adjustment to an equalizing payment owed by the wife.

Generally, "[a] trial court is without jurisdiction to award relief that was not requested in the pleadings or tried by consent." *Wachovia Mortg. Corp. v. Posti*, 166 So. 3d 944, 945 (Fla. 4th DCA 2015). "Due process requires that a party receive notice and an opportunity to be heard prior to entry of an order that affects [the party's] interests." *Montemarano v. Montemarano*, 792 So. 2d 573, 574 (Fla. 4th DCA 2001).

To be sure, we have previously "recognized that a trial court can award [child] support even where it is not sought in the pleadings." *Scariti v. Sabillon*, 16 So. 3d 144, 146 (Fla. 4th DCA 2009). For example, in *Freetly v. Mascolo*, 757 So. 2d 1286, 1287 (Fla. 4th DCA 2000), we disagreed with a mother's argument that "the trial court could not have required her to pay child support because the father did not seek it in his pleadings," relying on the principle that parents may not waive their child's right to support.

However, Florida law establishes a distinction between prospective child support and child support arrearages. "[A] parent cannot waive the child's right to support." *Alcalde v. Alcalde*, 340 So. 3d 529, 531 (Fla. 3d DCA 2022) (cleaned up). But a claim for enforcement of child support arrearages can be barred. "[T]he defense of laches, in the presence of extraordinary facts or compelling circumstances and where the child's welfare is not jeopardized, may bar enforcement of child support arrearages." *Robinson v. State, Dep't of Health & Rehab. Servs. on Behalf of Robinson*, 473 So. 2d 228, 229 (Fla. 5th DCA 1985). A court "may entirely refuse to enforce payment of past due child support only under certain exceptions," which "are in the nature of laches, estoppel, waiver, reprehensible conduct upon the part of the parent having custody or other strong equitable reasons." *Panganiban v. Panganiban*, 396 So. 2d 1156, 1157 (Fla. 2d DCA 1981).

Here, the trial court violated the husband's due process rights by sua sponte including child support arrearages in the amended final judgment as a superseding support order, even though child support was not raised in the pleadings, the issue was not noticed for hearing or even mentioned at trial, and the parties' joint pretrial statement included a stipulation that no support arrearages existed. *See Ramirez v. Gregory*, 403 So. 3d 414, 415 (Fla. 5th DCA 2025) (reversing retroactive child support award where "retroactive support was neither pled nor tried by consent"); *Steiner v. Steiner*, 638 So. 2d 174, 175 (Fla. 1st DCA 1994) ("A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court.").

On this point, we reverse and remand to the circuit court to eliminate any reference to the child support arrearages in a later amended final judgment.

### *The Circuit Court Erred as a Matter of Law When It Included Blanket Reservations of Jurisdiction in the Judgment*

The amended final judgment contains the following reservation of jurisdiction as to the equalizing payment the wife owed to the husband:

> The Court retains jurisdiction to enter further orders for payment of these funds, including [but] not limited to apportionment of proceeds of the sale of the home, **or to determine additional terms relating to the equitable distribution of the above assets as is necessary for a just and equitable result**.

10

(Emphasis added). Also, the amended final judgment contains another reservation of jurisdiction stating that the court "expressly retains jurisdiction" for the purpose, *inter alia*, of "modifying the terms" of the final judgment.

"At the time a judgment of dissolution of marriage becomes final, the parties' property rights, if determined by the judgment[,] are fixed as a matter of law." *Encarnacion v. Encarnacion*, 877 So. 2d 960, 963 (Fla. 5th DCA 2004). A trial court may clarify and enforce a final judgment. *Id.* But once "a final judgment is rendered, a trial court lacks jurisdiction under chapter 61 to determine property rights, unless the final judgment reserves jurisdiction for a specific purpose regarding identified property." *Id.*

Accordingly, a "blanket reservation of jurisdiction for *any* modification of the final judgment is erroneous as a matter of law and legally unnecessary." *Knecht v. Palmer*, 252 So. 3d 842, 847 (Fla. 5th DCA 2018) (emphasis added); *see also Rojas v. Otero*, 399 So. 3d 1160, 1164 (Fla. 3d DCA 2024) ("A blanket reservation for modification of the final judgment is erroneous as a matter of law, warranting reversal.").

Here, the trial court erred when it included blanket reservations of jurisdiction to determine "additional terms relating to equitable distribution" and "for purposes of . . . modifying the terms of this Final Judgment." While the trial court could have reserved jurisdiction for enforcement, clarification, or a specific purpose regarding identified property, the amended final judgment contained language operating as an improper blanket reservation of jurisdiction to modify the parties' property rights.

On this point, we reverse and remand for the trial court to remove from the amended final judgment any blanket reservation of jurisdiction that would allow for modification of fixed property rights.

*Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.*

MAY and KLINGENSMITH, JJ., concur.

*     *     *

**Not final until disposition of timely-filed motion for rehearing.**