891 So.2d 1086 (2004)
Jan M. SLOTNICK, Appellant,
v.
Alan J. SLOTNICK, Appellee.
No. 4D03-1248.
District Court of Appeal of Florida, Fourth District.
December 15, 2004.
Rehearing Denied February 9, 2005.
Robert L. Bogen, Boca Raton, for appellant.
John B. Rogers, Coral Springs, for appellee.
MAY, J.
The former wife appeals an order dissolving her second marriage to the same husband. She raises four issues, two of which we find require a reversal. Those issues concern the trial court's interpretation of the Marital and Property Settlement Agreement and its refusal to allow the former wife to present evidence in support of her claims. We reverse and *1087 remand the case for further proceedings consistent with this opinion.
The parties married the first time on August 28, 1977, and divorced on August 28, 1997. The 1997 judgment of dissolution incorporated a Marital and Property Settlement Agreement (MSA), which provided for six years of rehabilitative alimony, child support, and equitable distribution of property.
Significantly, the MSA also provided "the parties shall continue to live separate and apart from each other for the rest of their natural lives. Each party shall be free from interference, authority, and control, direct or indirect, by the other, as fully as if he or she were single and unmarried." Section XXII of the MSA provided the agreement "is binding on the parties permanently and irrevocably and shall survive said suit for dissolution of marriage or any law suit involving the parties."
On December 24, 1998, the parties remarried. On March 20, 2000, the wife petitioned for dissolution of marriage. In her petition, she sought child support, temporary, rehabilitative, permanent and/or lump sum alimony, equitable distribution of the parties' property acquired during the course of their marriages, enforcement of the executory portion of the husband's support obligations under the 1997 MSA, and attorney's fees.
The former husband filed a "Motion to Determine Whether a Previous Marital Settlement Agreement is Binding." The original trial judge issued an order, which stated:
1. Cox v. Cox, 659 So.2d 1051 (Fla.1995), controls this issue by virtue of its holding (1) that reconciliation or remarriage abrogates the executory provisions of a prior marital settlement agreement unless there is an explicit statement in the agreement that the parties intended otherwise, and (2) that the executed provisions of a prior marital settlement agreement are not affected by reconciliation or remarriage absent a reconveyance or a new written agreement to the contrary.
2. The language contained in the parties' prior agreement contains that degree of finality as to the provisions thereof such as to constitute a sufficiently explicit statement that reconciliation or remarriage does not abrogate the executory terms of the agreement.
The order further determined the rule pronounced in Cox applied only to property distribution, not support, and the combined length of the parties' two marriages and their separation should be considered in calculating support.
A successor judge heard the petition for dissolution on July 2nd and November 20th, 2002. At the July hearing, each attorney explained their interpretation of the prior court order. The successor judge disagreed with parts of the prior order and indicated it was not only inconsistent, but set the stage for an appeal no matter the outcome of the hearing.
At the November hearing, the successor judge informally questioned the parties' counsel regarding their respective positions. The former wife argued she was entitled to permanent alimony and requested a trial. The court denied her request. Without conducting a trial, the court decided it would incorporate the 1997 MSA into the final order. Thereafter, the former wife filed a motion to disqualify the judge based upon the court's refusal to conduct a trial or receive evidence.[1]
*1088 On December 2, 2002, the successor judge entered a final judgment of dissolution.
[T]he Court finds that the Mediated Marital Settlement Agreement that ended the first marriage, and was dated July 16, 1997, should remain in full force and effect. The Honorable Richard D. Eade, the prior Circuit Court Judge on this case, entered an Order on March 9, 2001, indicating that such Mediated Marital Settlement Agreement contained sufficient "explicit statements", to bring it within the holding in the case of Cox v. Cox, 659 So.2d 1051, [sic], (Fla.1995), thus avoiding the abrogation of the Settlement Agreement provisions. This Court concurs in the finding of "explicit statements", after having reviewed the entire Mediated Marital Settlement Agreement.
The court found the former wife was entitled to the benefit of the MSA, bridge-the-gap alimony for three years, and attorney's fees. The court found no entitlement to equitable distribution for the second marriage.
We disagree with the trial court on two issues. First, the court erred in determining the MSA explicitly addressed the issue of remarriage or reconciliation to allow the executory provisions to survive the remarriage. The words  reconciliation and remarriage  are nowhere to be found in the MSA. In fact, the MSA specifically anticipates the parties will NOT reconcile by indicating the parties shall "live separate and apart from each other for the rest of their natural lives."
As the supreme court noted in Cox,"parties in the throes of a dissolution who enter into a settlement agreement are not contemplating reconciliation or remarriage." Id. at 1054. For this reason, the supreme court held "that reconciliation or remarriage abrogates the executory provisions of a prior marital settlement agreement unless there is an explicit statement in the agreement that the parties intended otherwise." Id.
Explicit means "characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied...." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Unabridged) (3d ed.1993). If neither the parties nor the court can agree that the MSA provides for the executory provisions of the MSA to survive a remarriage, then the agreement cannot, by definition, be explicit.
Cox requires this precision in wording. This is because "it is the presumed intent of the parties at the time of the reconciliation to resume the marital relationship in all respects and abrogate any prior agreements restricting or inhibiting the rights of one of the spouses...." Cox, 659 So.2d at 1054. (quoting Brazina v. Brazina, 233 N.J.Super. 145, 558 A.2d 69, 72 (Ct. Ch. Div.1989)). Because the court system strives to encourage and strengthen marriage, it cannot favor the enforcement of executory provisions that would seek to undermine it. For such provisions to survive a remarriage, the intention of the parties must be clear or forever fade into the abyss of the prior divorce. We therefore hold the MSA in this case lacks the requisite "explicit statement" necessary to insure the executory provisions of the agreement survived the remarriage.
The dissent reaches the opposite conclusion on this issue by relying on section XXII of the MSA. We agree the language in this provision suggests the permanent and irrevocable nature of the agreement. However, it fails to account for the earlier statement revealing the parties never contemplated reconciliation or remarriage. Thus, it fails to provide the "explicit statement" required by Cox. As much as we would prefer to avoid further litigation for the parties, we must follow the law.
*1089 We also find the trial court committed reversible error when it denied the former wife's request to present evidence. "Due process requires that a party be given the opportunity to be heard and to testify and call witnesses on his behalf,... and the denial of this right is fundamental error." Pettry v. Pettry, 706 So.2d 107, 108 (Fla. 5th DCA 1998). The issues to be determined at the final hearing included the former wife's entitlement to permanent, rehabilitative or lump sum alimony, equitable distribution of the parties' property acquired during the course of their marriages, and attorney's fees. The trial court summarily disposed of these issues by informally discussing them with the attorneys. The court did not allow either party to present evidence or cross-examine witnesses. This summary process, while initially appearing efficient, denied the former wife her due process of law. This error becomes more significant based on our holding that the executory provisions of the MSA did not survive the remarriage.
We therefore reverse the final judgment of dissolution and remand the case to the trial court for further proceedings consistent with this opinion.
REVERSED and REMANDED.
GROSS, J., concurs.
FARMER, C.J., dissents with opinion.
FARMER, C.J., dissenting.
The only real issue in this case is whether the 1999 marital settlement agreement, reached during mediation in a pending dissolution of the parties' original marriage, is binding in this new dissolution action after their brief reconciliation. The majority conclude that the agreement has some application but does not bar a trial on alimony and other issues. Because the text of the agreement does not allow the wife to seek any alimony other than what has been provided in that agreement, and the parties advised the court that they had no dispute as to the other issues mentioned in the majority opinion, I can find no error in denying her a trial. I would affirm.
The pertinent provisions in the agreement are as follows:
"it is the intention and desire of the parties to settle their respective property rights, support rights, and all other marital issues...." (Preamble, 4th cl.);
...
"the Husband and Wife freely and fully accept the provisions, terms and conditions hereof and in consideration of the promises and mutual covenants herein contained as well as for other good and valuable consideration; understanding the stated objective is to finally settle and determine in all respects and for all purposes the respective present and future property and financial rights, claims and demands in such manner that any action with respect to said rights and obligations, past, present, future, shall be governed and conclusively settled and determined by this Agreement." (Agreement cl.)
...
"in any suit for dissolution of marriage or separate maintenance hereinafter brought by either party against the other, this Agreement shall be filed therein and introduced in evidence by either party to such cause as their marital settlement and made part of any order, judgment or decree entered therein. This Marital and Property Settlement Agreement is binding on the parties permanently and irrevocably and shall survive said suit for dissolution of marriage or any law suit involving the parties." (Para.XXII) [e.s.]
In similar terms the agreement settles all property claims and obligations.
*1090 The highlighted text explicitly demonstrates an intent that the parties intended their 1999 agreement to govern all future relations between them and that it applied to any future dissolution of marriage action.[2]Cox v. Cox, 659 So.2d 1051 (Fla.1995), requires only that the agreement be explicit as to the intent of the parties regarding the effect of their agreement. Moreover, Cox applies only to executory agreements, not to fully executed issues. 659 So.2d at 1054. Here, the agreement is absolutely clear that this is an unqualified waiver of permanent alimony forever. The waiver has been executed; there is nothing left to perform with regard to it. It is clearly binding in this second divorce. Under the agreement the only alimony due is the rehabilitative alimony for six years (Para.XVI) and certain additional support payments for the period until the original house was sold (Para.XI). By this agreement she waived all future claims for permanent alimony.
At the final hearing in this dissolution action after reconciliation, the parties thrashed out all the issues with the trial Judge. It turned out that there was no dispute as to what was still owed under the 1999 agreement; the husband conceded liability and asked only for a brief period to obtain a loan to pay in full the total still owing (which the trial judge allowed without objection from the wife). The parties also each acknowledged there was no dispute as to any property acquired during the brief remarriage. As for the wife's claim for attorneys fees, the Judge determined the reasonable hourly rate to be used, and announced that the total fees awarded to the wife from the husband would be determined in a later hearing. That left only the subject of alimony as a possible issue for trial.
After listening to arguments pro and con and considering the precise text of the agreement, the Judge announced that she would award only rehabilitative alimony for three years for the remarriage. The wife objected and wanted to know why the court would not hear further evidence on her claim to permanent alimony. The trial Judge responded  correctly in my opinion  that the alimony agreement was an executed contract, not an executory one, waiving any future claim to permanent alimony. Because as a matter of law she had irrevocably given up permanent alimony, I cannot understand how it would be error to deny her a trial on that issue.
Where a trial Judge determines that a party's claim is barred from further litigation as a matter of law, there is no lack of due process in refusing to receive evidence on that issue. As the wife's claim to permanent alimony was fully determinable on legal grounds arising from a legal construction of an agreement, no further evidence was necessary or even appropriate. After all, parol evidence is inadmissible to change a written contract.
The refusal to receive further evidence on the permanent alimony claim does not implicate an issue of due process but of substantive law. Not every claim is factually litigable just because a party thinks it should be. If that were the case, summary judgments and directed verdicts would not be allowed. Although this was a non-jury *1091 trial, in effect the trial Judge here granted a "directed verdict" on the issue of permanent alimony because a proper legal interpretation of the contract waived it.
I should also stress that the trial Judge found that the wife had already spent way too much of the parties' limited resources in litigating her remarriage claim to permanent alimony. The expeditious manner in which the trial Judge conducted the trial was a desirable effort to spare the parties from further diminution in their limited personal resources caused by spending more money in attorney's fees over an issue that had been settled as a matter of law. Sadly, a reversal by this court scuttles that wise resolution and does instead the very thing the settlement agreement was designed to avoid. If there is equity and due process in such a reversal, I cannot see it.
NOTES
[1] The successor judge is no longer on the bench. This fact along with our remand for further proceedings, renders this and other issues moot.
[2] The majority think the agreement is not explicit as to its effect on any remarriage. They point out that the agreement states that the parties intend "at all times" to live apart for the rest of their lives. From this the majority infer an explicit statement that they were not thinking of remarriage. Actually the only logical inference from the quoted text is to the contrary, that they were then explicitly thinking of never remarrying. But their intent at the time of making the agreement is hardly informed by their later change of heart. Moreover, one can intend never to remarry yet still agree to settle all claims that might arise from any future such misstep.