FORST, J.
Appellant Martha Julia (“the Wife”) appeals the final judgment of support and the final judgment of dissolution of marriage related to her second marriage to Appellee Juan Carlos Julia (“the Husband”). The Wife argues that the trial court’s judgments must be reversed in light of violations of her right to due process. We agree. Furthermore, we find six additional shortcomings with respect to the trial court’s decisions that must be addressed on remand. Accordingly, we reverse the final judgments for reasons stated below and remand for further proceedings.
Background
The parties were first married in October 1991, but they divorced in January 1993. They did not remain living separately for very long, however, and eventually remarried in October 1994. Four children were born to the marriage, three of whom are still minors as of the date of this opinion.
The parties separated in May 2010 and the Husband petitioned for dissolution of marriage that June. The Wife later counter-petitioned for dissolution. The parties engaged in back-and-forth contentious litigation until trial was finally set for July 2013.
At the beginning of the trial, the trial court noted that neither party had filed a witness list pursuant to a court order; thus, the court determined that only the parties would be allowed to appear as witnesses. As the petitioner, the Husband presented his case first, appearing pro se. He called the Wife as his first witness and spent an extensive amount of time questioning her about unimportant details and often avoided getting to the point on key *519 issues. Recognizing this, the trial court repeatedly admonished the Husband and told him to “keep things moving.” At the same time, the trial court kept reassuring the Wife that she would get equal time to present her case. Even so, the Husband’s direct examination of the Wife continued throughout the morning and into the afternoon of the one-day trial.
At one point, the Husband asked if there would be closing arguments, to which the trial court replied, “No. I’m not taking the time for it, we don’t have time for it.”
Once it was time for the Wife’s counsel to cross-examine her as the Husband’s witness, the judge commented, “Feel free to expand your cross to cover anything that you want to cover in the nature of direct so you don’t have to call her back if you don’t want to.” Then, the trial court added, “You’re free to call her back in your case in chief, but let’s try and move it along.” The Wife’s counsel was able to cover some, but not all, of the issues before the court. During that time, the trial court continued to remind the parties of the limited time. The Husband was then allowed a redirect of the Wife, but the trial court did not allow the Wife’s counsel to have a redirect or re-cross of the Wife and commented, “You may call her in your own case in chief if we have time, I don’t know that we do.”
The Husband subsequently took the stand as his second witness very late in the afternoon. The court inquired of him on a variety of topics and then allowed the Wife’s counsel to cross-examine him. After the Wife’s counsel had barely begun his questioning, the following exchange occurred:
Court: Mr. Klein [the Wife’s counsel], your questioning will be finished at 5:15, so you’ll have to work everything in.
Klein: We haven’t been able to do our case in chief, and we would like an opportunity to—
Court: Okay, mistrial, we’ll reset this six months from now.
Husband: Your Honor, objection.
Court: I can do it today in 15 minutes if you can. If you cannot, then we’re done. I told you to expand your direct when your client was on the stand. Can you do it or not?
Klein: Apparently not, your Honor. Court: Give me five minutes. No, I’m ruling today. You have 15 minutes to complete your case. You have had more than enough time to put this case on. I told you to expand your questions through your client, and your client’s real good at running off the top with her answers. You may complete your questioning at 5:15 and I will rule at that time and they will know where they stand. It’s not fair to them to have to come back six months from now, but it is not fair to me to overrun the time like it is. I’ve got five cases that I have to prepare for tomorrow and that hasn’t even started yet. Get moving.
Before the Wife could complete her cross-examination of the Husband, the trial court abruptly stopped the questioning and said that it was ready to rule. The trial court, as it had earlier stated, did not allow either party to present closing arguments before ruling, and neither party objected.
After the oral ruling, the Wife expressed concern about the unequal time allocated between the parties. The trial court responded that the Wife should “take it up on appeal.” The trial court issued two final judgments. The final judgment of support awarded durational alimony and child support to the Wife. The final judgment of dissolution of marriage dissolved the parties’ marriage and distributed the *520 parties’ assets and liabilities. The Wife now appeals both final judgments on substantive and due process grounds.
Due Process Violations
Because we find no error with the trial court’s denial of the Wife’s motion for a continuance before trial or its decision to exclude the witnesses that were not disclosed pursuant to the pretrial order, we will not discuss those issues but begin by addressing the Wife’s other arguments regarding due process violations.
We review a possible violation of due process de novo. See VMD Fin. Sens., Inc. v. CB Loan Purchase Assocs., LLC, 68 So.3d 997, 999 (Fla. 4th DCA 2011).
“Due process requires that a party be given the opportunity to be heard and to testify and call witnesses on the party’s behalf ... and the denial of this right is fundamental error.” Minaban v. Husted, 27 So.3d 695, 698 (Fla. 4th DCA 2010) (quoting Pettry v. Pettry, 706 So.2d 107,108 (Fla. 5th DCA 1998)). The opportunity to be heard must be “full and fair, not merely colorable or illusive.” Pelle v. Diners Club, 287 So.2d 737, 738 (Fla. 3d DCA 1974) (“[W]e find that the trial court erred in failing to grant the appellant an opportunity to present his case-in-chief and, therefore, he was denied the protection afforded by the constitutional guarantee of due process of law.”); see also Walker v. Edel, 727 So.2d 359, 360 (Fla. 5th DCA 1999) (finding a trial court’s refusal to hear a party’s defense was “clearly error which affected the issues before the court”).
The record clearly evidences a pattern of depriving the Wife of her opportunity to be heard and present her case throughout the trial. Although the trial court made statements that the parties would be given equal time and that the Wife would get the opportunity to present her case-in-chief, no such opportunity was presented. The Wife was not able to call any witnesses on her behalf or present argument of counsel at the end of the Husband’s case in violation of the guarantees of due process.
Additionally, this Court has recognized that justice cannot be “administered arbitrarily with a stopwatch,” yet that is what happened in the instant case. See Woodham v. Roy, 471 So.2d 132, 134 (Fla. 4th DCA 1985). Throughout the hearing, the trial court made it clear that it intended to complete the trial in one day without going much beyond 5:00 p.m. Although this goal is not inherently violative of due process, summarily shortening proceedings can give rise to a due process violation when they fail to afford a party a full, fair, and meaningful opportunity to be heard, such as in this case where the Wife was severely restricted in time to examine witnesses, to call any of her own witnesses, or to make any argument as to the evidence presented. See Slotnick v. Slotnick, 891 So.2d 1086, 1089 (Fla. 4th DCA 2004) (holding that due process is violated when a trial court summarily disposes of the issues without allowing either party to present evidence or cross-examine witnesses, even if the issues were informally discussed with the attorneys); Pelle, 287 So.2d at 738.
We note that neither party was given an opportunity to present closing arguments, although Appellant arguably did not preserve a challenge to this denial. In Pettry, the Fifth District stated that “due process [also] requires that a party be given the opportunity to present closing argument.” Pettry, 706 So.2d at 108; see also Minakan, 27 So.3d at 699 (“Even if [a party’s] evidence would not have impressed the court, a party has the right to *521 present evidence and to argue the case at the conclusion of all the testimony.”). Although a closing argument can be waived (or, perhaps replaced with written closing arguments), Pettry indicates that the opportunity to present one must at least be available to comply with due process. Pet-try, 706 So.2d at 108[1]
The situation in the present case is not as egregious a violation as we observed in Slotnick; however, the record clearly reflects that the Wife was denied a full, fair, and meaningful opportunity to be heard in this final hearing before the judgment was entered. See Slotnick, 891 So.2d at 1089. Even if the trial court believed that recalling the witnesses would not make any further impression on the court, it was still required to allow the Wife to present her case fully, including argument at the conclusion of the evidence. See Minakan, 27 So.3d at 698-99; Pettry, 706 So.2d at 108; see also Cole v. Cole, — So.3d-, 2013 WL 5989825, 38 Fla. L. Weekly D2376 (Fla. 3d DCA Nov. 13, 2013) (“The failure to give a party the chance to present witnesses or testify violates [the] fundamental right” of “a full and fair opportunity to be heard in judicial proceedings.”).
Additional Grounds for Remand
The Wife makes a number of arguments on appeal, in addition to the due process argument discussed above. We find merit in six of these challenges to the trial court’s decision.
First, in awarding the four children exclusive use and possession of the marital home, with the parents rotating in at two week intervals, the trial court’s decision made no mention of “the best interests of the children” with respect to this ruling. This is a required factor for the court to consider when determining parental responsibility and distribution of assets. See §§ 61.075(l)(h), 61.13(2)(c), Fla. Stat. (2013).
Second, we find that the trial court failed to make required findings of fact regarding equitable distribution. In particular, the court’s decision did not include “specific written findings of fact” as to the individual valuation of significant marital assets. See § 61.075(3)(b), Fla. Stat. (2013); Lift v. Lift, 1 So.3d 259, 260 (Fla. 4th DCA 2009) (noting the failure to include “specific written findings of fact that identify, classify, value, and distribute the parties’ assets and liabilities” in a trial court order regarding equitable distribution “precludes meaningful appellate review”) (quoting and citing Pavese v. Pave se, 932 So.2d 1269, 1270 (Fla. 2d DCA 2006)).
Third, the court’s final judgment of dissolution does not adequately support its determination that $18,000 in debt should be allocated to the Wife. The trial court made no finding as to whether this liability was marital or non-marital, as required by section 61.075(3), Florida Statutes.
Fourth, the trial court must revisit the determination that the farm at issue in the dissolution is completely a non-marital asset. Marital assets include not only assets acquired by either spouse during the marriage, but also the “enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both.” § 61.075(6)(a)(l)(a)-(b), *522 Fla. Stat. (2013); see also Barner v. Barner, 716 So.2d 795, 797 (Fla. 4th DCA 1998). In reaching its conclusion regarding the farm, the trial court failed to address the parties’ testimony regarding the Husband’s efforts expended on the farm during the marriage and the contribution of marital assets to the upkeep of the farm.
Fifth, in imputing income to the Wife in the amount of $45,000 per year, the trial court neglected to make any findings with respect to whether the Wife’s unemployment at the time of the hearing was “voluntary,” nor did the court address the Wife’s evidence that she has been making “diligent and bona fide efforts to find employment.” See Durand v. Durand, 16 So.3d 982, 985 (Fla. 4th DCA 2009) (quoting Leonard v. Leonard, 971 So.2d 263, 265 (Fla. 1st DCA 2008)). This court has determined that both inquiries are necessary in imputing income and that “[t]he spouse claiming income should be imputed to the unemployed or underemployed spouse bears the burden of showing both employability and that jobs are available.” Id.
Sixth, the trial court failed to make the required findings to support its award of durational, rather than permanent, alimony. The trial court’s failure to make findings of fact relative to all the statutory factors for an alimony award is reversible error. See Ondrejack v. Ondrejack, 839 So.2d 867, 870 (Fla. 4th DCA 2003). Although the trial court listed the statutory factors in the final judgment of support, it failed to list any factual findings relating to those factors or to the conclusion that the Wife has a need for alimony and the Husband has an ability to pay. This was an abuse of discretion that needs to be rectified on remand.
Conclusion
“While courts have broad authority to control their dockets, trial judges must use this authority to ‘manage their courtrooms so that the people’s business may be conducted fairly, efficiently, and expeditiously.’ ” Smith v. Smith, 964 So.2d 217, 218 (Fla. 2d DCA 2007) (quoting McCrae v. State, 908 So.2d 1095,1096 (Fla. 1st DCA 2005)). We recognize the difficulty of balancing the desire of parties to “have their day in court” with the necessity of the courts to keep to a schedule and accommodate the similar desire of other parties and that this becomes even more difficult when “day in court” unexpectedly becomes a “day and a half.” We further acknowledge that a judge’s work day does not necessarily end when the judge leaves the bench after a hearing or trial, as a great deal of time off of the bench is required to prepare for the next day’s hearings and to draft orders and decisions.
In the instant case, despite the trial court’s efforts to push the parties to complete the case within the scheduled time-frame, when 5:15 p.m. came, one party (the Wife) had not been afforded her “fair share of the court’s time.” Id. at 219. Moreover, as noted above, the court’s final judgment lacked several required findings. Accordingly, we are compelled to reverse the final judgment of dissolution of marriage as well as the final judgment of support and remand for a new trial consistent with this opinion.

Reversed and Remanded for a new trial.

STEVENSON and CONNER, JJ., concur.

. We recognize that there is no per se right to an oral closing argument where written closing arguments remain an appropriate tool with the trial court. See, e.g., Weymouth v. Weymouth, 87 So.3d 30, 33 (Fla. 4th DCA 2012). However, the trial court presented no opportunity for either oral or written closing arguments in the instant case.