Forst, J.
The complex and convoluted history of the purchase of a business by Appellant E-Commeree Coffee Club from the Appel-lees involved at least three separate lawsuits and an appeal from judgment in one of those three. The parties attempted to settle these suits through a single agreement (“the Settlement Agreement”). In this action initiated by Appellant to enforce the Settlement Agreement, we hold that the trial court made several significant errors in its handling of evidence below. Therefore, we reverse and remand for a new hearing in all respects.
Background
The proceedings between Appellant and the Appellees involve the sale of a coffee-distribution business from the latter to the former. As part of the sale process, Appel-lees hired an accountant named Phil Shechter to create a report valuing the business being sold. Shechter produced a report for Appellees which valued the business at approximately $1.2 million. This report (“Report 1”) also stated that the opinions expressed were based on the information available to Shechter at the time and that he reserved the right to update the report should additional information become available.
After Report 1 was created, Appellees filed with the trial court an affidavit created by Jason Eisner, one of the Appellees. This affidavit stated that the business being sold had marketing expenses in 2011 of approximately $662,000.
Following the creation of Report 1 and the filing of the Eisner Affidavit, the parties entered into the Settlement Agreement in an attempt to resolve all four pending actions. Section 6 of the Settlement Agreement states in relevant part:
The Parties acknowledge that Phil Shechter, Global’s valuation expert, is in *11 the process of preparing a Revised Supplemental Valuation Report. (“Supplemental Report or Final Valuation”)....
The Parties and specifically, [Buyers] stipulate and agree, that each of them shall be bound by Phil Shechter’s Final Valuation, which said Valuation shall be conclusive and binding upon all the Parties. However, both parties reserve the right to verify Phil Schechter’s conclusions and contest his findings.
After the Settlement Agreement was drafted, Shechter submitted an “Updated Expert Report” (“Report 2”). In Report 2, Shechter recognized that he had been hired by both Appellant and Appellees, rather than by Appellees alone as he was for Report 1. Report 2 concluded that the business being sold was valued at either $527,000 or $821,000 depending on whether certain sales should be considered. Report 2 did not take into account any overhead costs or marketing expenses.
The same day as Report 2 was issued, Appellees moved the court to compel settlement under the agreement. In the meantime, Appellant took issue with Report 2’s failure to include overhead and marketing expenses and contacted Shechter. Realizing that the parties disagreed on the nature of the service he was to provide, Shechter agreed to issue a new report which included the items desired by Appellant.
Shechter’s final report, “Report 3,” valued the sold business at $190,000. This report considered the $662,000 in marketing expenses described in the Eisner Affidavit. Appellant moved the court to recognize Report 3 as the “Revised Supplemental Valuation Report” (“RSVR”) described in Section 6 of the Settlement Agreement and to enforce that agreement.
At the hearing on the enforcement of the Settlement Agreement, Appellant sought to introduce evidence of Report 1 and other pre-agreement documentation to show the intent of the parties regarding the term “RSVR.” The trial court largely agreed with Appellees that pre-agreement evidence, including Report 1, was inadmissible.
Toward the end of the hearing, evidence was introduced which indicated that the Eisner Affidavit, which Appellant argues induced it into entering the Settlement Agreement in the first place, was fraudulent in both its contents and in the fact that it was not properly executed. The trial court struck not only the affidavit but also all evidence and testimony regarding Report 3 because that report was based, in part, upon the affidavit. Appellant attempted to introduce other evidence at the hearing which would support Report 3’s consideration of $662,000 in marketing expenses, but the trial court abruptly cut off the parties, asked for proposed final orders, and stated “I’m done.”
The trial court subsequently entered an order enforcing the Settlement Agreement and finding Report 2 to be the RSVR contemplated by the agreement. This appeal followed.
Analysis
The appeal raises a wide range of issues to this Court, but we need not and do not address them all. Each stem from a single underlying error which our reversal should resolve—the trial court’s failure to admit relevant evidence and its cutting off Appellant’s attempts to present further evidence.
 Trial court determinations of the relevancy of evidence are reviewed for an abuse of discretion. Thigpen v. United Parcel Servs., Inc., 990 So.2d 639, 645 (Fla. 4th DCA 2008). Whether a contract is ambiguous is reviewed de novo. Bd. of Trs. of the Internal Improvement Tr. Fund v. *12 Lost Tree Vill. Corp., 805 So.2d 22, 26 (Fla. 4th DCA 2001).
Here, Appellant attempted to introduce evidence'that the term “RSVR,” as used in the Settlement Agreement, was ambiguous. We agree that the- term was ambiguous as defined in Section 6 of the Settlement Agreement. The second paragraph of Section 6 states that the RSVR “shall be conclusive and binding , upon all the Parties.” The very next sentence, however, states that , “both, parties reserve the right to verify Phil Shechter’s conclusions and contest his findings.”
“A patent ambiguity is intrinsically apparent on the face of the document due to ‘the use of defective, obscure, or insensible language.”’ Nationstar Mortg. Co. v. Levine, 216 So.3d 711 (Fla. 4th DCA 2017) (quoting Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1002 (Fla. 2d DCA 1995)). An internal contradiction can constitute a patent ambiguity. Id. Here, there is a clear internal contradiction in stating that the RSVR “shall be conclusive and binding upon all the Parties” but then providing that “both parties reserve the right to verify Phil Shechter’s conclusions and contest his findings.” Thus, the intent of the parties with respect to the finality of the in-the-works Shechter report’s findings and conclusions is unclear from the face of the document.
On remand, the court should consider the relevant evidence going to the meaning of the term “Revised Supplemental Valuation Report” in determining which, if either, of Reports 2 and 3 was the “RSVR” contemplated by the parties via the Settlement Agreement. The court should also allow Appellant to present evidence beyond the Eisner Affidavit which might support the conclusions in Report 3. See Elmore v. Enterprise Developers, Inc., 418 So.2d 1078, 1079 (Fla. 4th DCA 1982) (“Where, the language of a contract is ambiguous or uncertain ip meaning, the court may receive evidence extrinsic to the contract for the purpose of determining the intent of the parties at the time they executed the contract.”).
Additionally, “[t]he constitutional guarantee of due process, dictates a full and fair opportunity to he heard in judicial proceedings. The failure to give a party the chance to present witnesses.or testify violates this fundamental, right.” Cole v. Cole, 159 So.3d 124, 125 (Fla. 3d DCA 2013); see also Julia v. Julia, 146 So.3d 516, 520-21 (Fla. 4th DCA 2014) (describing a due. process violation when a party was not allowed to present her full case or give closing arguments). Here, Appellant was in the middle of its case when it was revealed that the Eisner Affidavit, filed by Appellees, was fraudulent. The court therefore struck the affidavit and all testimony based upon it, including testimony regarding Report 3 which relied on the affidavit. This itself does not appear.improper. But when Appellant attempted to introduce further evidence of the truth of the matter, asserted in the affidavit- so that Report 3 and the related testimony could be rehabilitated, the court abruptly asked the parties for proposed final orders. Appellant expressed confusion, with counsel saying that he was “not understanding” the court and that he “didn’t know Your Honor was going to cut us off.” Counsel then requested to read part of a deposition into the record, and the court said “I’m done.” No further evidence was taken. The trial court’s actions constitute a clear violation of Appellant’s right to procedural due process. See Cole, 159 So.3d at 125; Julia, 146 So.3d at 520-21. Appellant never rested its case and clearly intended to introduce more evidence, which the trial court summarily excluded as a whole. This was error and requires reversal. ,
*13 Conclusion
Because the trial court erred in failing to admit evidence which would have, at the very least, gone to resolving the ambiguity raised by Appellant, as well as erred by essentially walking off the bench mid-hearing, we reverse the order on the motion to enforce the Settlement Agreement and remand for a new hearing. At the new hearing, the court will consider the relevant evidence going to the meaning of the term “Revised Supplemental Valuation Report” in determining which, if either, of Reports 2 and 3 was the “RSVR” contemplated by the parties via the Settlement Agreement. The court should also allow Appellant to present evidence beyond the Eisner Affidavit which might support the conclusions in Report 3. We offer no opinion on whether such evidence will be sufficient, and no opinion on which, if either, report should be recognized as the report contemplated by the Settlement Agreement.

Reversed and remanded for a new hearing.

Damoorgian and Gerber, JJ., concur.