DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JEFFERY M. STAMLER,

Appellant,

v.

LEAH M. STAMLER,

Appellee.

No. 2D2023-2339

_____

April 11, 2025

Appeal from the Circuit Court for Hillsborough County; Wendy DePaul, Judge.

Jeremy T. Simons and K. Dean Kantaras of K. Dean Kantaras, P.A., Palm Harbor, for Appellant.

Eric R. Maier of Older, Lundy Koch & Martino, Tampa, for Appellee.

ATKINSON, Judge.

Jeffery Stamler (Former Husband) appeals the trial court's postjudgment final order granting in part and denying in part Leah Stamler's (Former Wife) motion for contempt and enforcement. In relevant part, the trial court concluded that Former Husband failed to reimburse Former Wife $15,793.13 in child expenses pursuant to section 4.3 of the parties' marital settlement agreement and ordered him to pay

that amount.  We reject Former Husband's argument that the trial court erroneously construed the agreement, but we agree that the trial court violated his procedural due process rights because it did not afford him an opportunity at the hearing to present any evidence concerning disputed factual issues.  We reverse and remand for further proceedings.

## Background

The parties have two minor children and divorced in 2021 pursuant to a final judgment of dissolution of marriage, which incorporated the marital settlement agreement at issue in this appeal. Section 4.3 of the agreement provides as follows:

> 4.3.  In addition to the foregoing and for so long as Husband has a child support obligation, Husband shall be 100% responsible for various child related expenses as further described below.  The parties acknowledge that Wife will make many of these purchases for the minor children which Husband is ultimately responsible.  Wife will establish one credit card in her name that will be used exclusively for the below child related expenses.  On a monthly basis, Wife will provide Husband the credit card statement used for the children's expenses.  Within thirty (30) days of receipt of Wife's credit card statement, Husband shall reimburse Wife 100% of the following child-related expenses for the minor children: . . . .

Section 4.3 then lists the "child-related expenses" for which Former Husband is responsible, such as the children's school tuition, tutoring costs, and cellular phone expenses.  Pursuant to section 4.3, Former Wife obtained an "Athleta MasterCard" for her payment of the reimbursable child-related expenses.

In March 2023, Former Wife filed a motion for contempt and enforcement, alleging that Former Husband stopped reimbursing her for the minor children's expenses as of April 2022.  She scheduled a one-hour hearing on the motion.  According to Former Wife's testimony,

2

Former Husband resumed making payments after the motion was filed, but despite making payments in June, July, and August of 2023, he still owed $15,793.13. She introduced a spreadsheet into evidence that listed the various expenses for which she contended she was entitled to be reimbursed and noted whether they had been paid or were still owed. The spreadsheet indicated that she paid many of the child-related expenses with her Athleta MasterCard.

However, Former Wife testified that she also used means other than her Athleta MasterCard to pay many of the child-related expenses for which she sought reimbursement. Her spreadsheet indicated that she paid for expenses through methods and sources such as the money transfer application Venmo, a Bank of America account, and a Chase Bank account. In other instances, the spreadsheet merely listed generic documentary support for an expense such as "invoice" or "screenshot attached" without reference to the actual payment method used. Former Wife testified that she used other payment methods for "things [she] could not put on the Athleta credit card" and for the "[o]ne or two times [she] mistakenly did not have the Athleta card with" her.

Former Husband argued that under section 4.3, he was not responsible for reimbursing child-related expenses that Former Wife paid through means other than the Athleta MasterCard. An objection made during Former Husband's cross-examination of Former Wife led to a discussion among the parties and the trial court regarding the meaning of section 4.3. The trial court rejected Former Husband's reading of the provision, instead explaining that the agreement "says . . . that card will be used exclusively for expenses, but it doesn't say that she can't use other means to pay." "[I]t looks like that card can only be used for the children's expenses. That doesn't mean you can't pay the children's

expenses in other ways." Regarding the time period for reimbursement of child-related expenses, the trial court opined that under the agreement, payment would be required "in 30 days if it's on the credit card." "If it wasn't on the credit card, I don't know how much time you have to reimburse. It doesn't say." The trial court then informed the parties there was "maybe 10 minutes left" for the hearing.

After Former Husband finished cross-examining Former Wife, the trial court said, "I don't even know that we have time for redirect at this point because we've already gone through an hour." The trial court then revisited its interpretation of section 4.3, reasoning that "it is clear" Former Husband is "ultimately responsible for paying" the expenses but that section 4.3 was ambiguous regarding whether the Athleta MasterCard "is the only form of payment that may be used for those expenses." The trial court also reasoned that notwithstanding the other payment sources, "there were still certain expenses that were on the [Athleta] credit card that were not paid within 30 days and that is clear." Former Husband responded that he had already reimbursed Former Wife for the expenses she paid with the Athleta credit card, though he acknowledged he did not do so timely, and reiterated that he was not obligated to reimburse the child-related expenses that Former Wife paid through other means. Discussion regarding the meaning of section 4.3 continued until the trial court interjected that it was "now 15 minutes late for [its] next hearing" and that it was "done with testimony." The following exchange ensued:

> [HUSBAND'S COUNSEL]: Your Honor, I have a couple of cases, but my client hadn't even testified yet. So you can't – I'm not understanding.
>
> THE COURT: You scheduled this for an hour.
>
> [HUSBAND'S COUNSEL]: I didn't schedule it.

4

THE COURT: It's a contempt motion.  It's not a trial.
The trial court ultimately stated that it was "out of time" but that it thought section 4.3 was "vague enough" that it would only consider the issue of enforcement and not contempt.  Former Husband reminded the trial court that "the other issue is [his] client didn't testify and he probably has a different version."  The trial court concluded the hearing but allowed the parties some time to submit case law before it issued a final ruling.

The trial court later issued a written order granting Former Wife's request for enforcement but denying her request for contempt.  The trial court reasoned that it was "clear" Former Husband was responsible to pay 100% of the child-related expenses.  The trial court explained that it "received evidence that the . . . remaining amount due as of the date of the hearing is $15,793.13" and that there was "no evidence that the expenses incurred were unreasonable or not in compliance with the" agreement, so it ordered Former Husband to pay that amount to Former Wife.

## Analysis

Former Husband argues on appeal that the trial court erroneously construed section 4.3 of the agreement and violated his procedural due process rights, both of which are pure issues of law that we review de novo.  *See Athienitis v. Makris*, 346 So. 3d 732, 734 (Fla. 2d DCA 2022) ("We review a claim of deprivation of procedural due process de novo." (quoting *Pena v. Rodriguez*, 273 So. 3d 237, 240 (Fla. 3d DCA 2019))); *Herbst v. Herbst*, 153 So. 3d 290, 292 (Fla. 2d DCA 2014) (reviewing "the trial court's interpretation of the [marital settlement agreement] de novo").

5

We agree with the trial court's conclusion that under section 4.3, Former Wife's use of payment methods other than her Athleta MasterCard to pay for child-related expenses does not relieve Former Husband of his obligation to reimburse her for those expenses. Section 4.3 unambiguously provides that Former Husband is "100% responsible" for the child-related expenses. Even if Former Wife initially pays for the expenses, which the parties expressly contemplated would happen, Former Husband is still "ultimately responsible" to pay them. The only language in section 4.3 that qualifies Former Husband's ultimate responsibility to reimburse Former Wife for child-related expenses is the requirement that the expenses be among those "described below."

Former Husband points to the portion of section 4.3 providing that "Former Wife will establish one credit card in her name that will be used exclusively for the below child related expenses," and he argues that the word "exclusively" indicates Former Wife must use the Athleta MasterCard to the exclusion of other payment methods to qualify for reimbursement of the child-related expenses. As used in section 4.3, however, the word "exclusively" is an adverb that modifies the verb phrase "will be used," thereby describing how *the credit card* is to be used, not how all the child-related expenses are to be paid. Former Husband would have us interpret the provision the other way around—to provide that child-related expenses will be paid *exclusively by* means of the credit card. But that is not what the provision says. It says the *card* will be used *exclusively for* child-related expenses. In other words, the word "exclusively" indicates that Former Wife's use of the credit card will be used for child-related expenses to the exclusion of other expenses— not that the credit card will be used to pay for all child-related expenses to the exclusion of other means of payment.

6

Former Husband also argues that his reimbursement obligation is only triggered upon his receipt of the "credit card statement" (singular) each month and that the fact that section 4.3 describes his monthly reimbursement obligation in reference to a single, particular credit card statement indicates that he is only required to reimburse the child-related expenses that Former Wife pays with that specific credit card. But the language in section 4.3 regarding the credit card statement serves other purposes, and there is no language in section 4.3 that requires Former Wife to use that credit card to pay for all the child-related expenses or that disqualifies her from obtaining reimbursement if she uses a different payment method. Use of the credit card statement to trigger the thirty-day time period within which Former Husband must reimburse Former Wife for child-related expenses does not, as Former Husband suggests, indicate that only expenses incurred on that credit card are reimbursable. The language of section 4.3 indicates the opposite. While provision of the credit card statement determines *when* Former Husband is required to reimburse Former Wife each month, the language describing *what* he is required to reimburse—"100% of the following child-related expenses for the minor children"—is unqualified by any reference to the credit card. So, while Former Husband is required to reimburse all the purchases indicated on the credit card statement unless he has reason to believe Former Wife has breached the agreement by using the card for unauthorized expenses, that is not all he is required to pay. To the contrary, he is "100% responsible" for the child-related expenses enumerated in section 4.3 and incurred by Former Wife, of which he "shall reimburse Wife 100%" on a monthly basis according to the schedule described in the provision. Therefore, the trial court did not err by imposing an obligation on Former Husband

7

to reimburse Former Wife for child-related expenses she incurred by payment methods other than the Athleta credit card.

Former Husband is correct, however, that the trial court violated his procedural due process right to be heard when it precluded him from testifying or presenting evidence regarding which expenses did or did not constitute reimbursable child-related expenses and whether he had already reimbursed Former Wife for some of the expenses that the trial court ordered him to pay. *See Vollmer v. Key Dev. Props., Inc.*, 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007) (providing that the due process "right to be heard at an evidentiary hearing . . . includes the right to 'introduce evidence at a meaningful time and a meaningful manner' " and that the "violation of a litigant's due process right to be heard requires reversal" (first quoting *Baron v. Baron*, 941 So. 2d 1233, 1236 (Fla. 2d DCA 2006); then citing *County of Pasco v. Riehl*, 635 So. 2d 17, 18 (Fla. 1994); and then citing *E.I. DuPont De Nemours & Co. v. Lambert*, 654 So. 2d 226, 228 (Fla. 2d DCA 1995))). Former Husband maintained below that he had already reimbursed all the expenses that Former Wife paid with her Athleta MasterCard, although he acknowledged he did not do so timely. But without allowing Former Husband to testify or otherwise present evidence on that issue, the trial court accepted Former Wife's evidence that she was still owed $15,793.13—which according to her spreadsheet included some expenses she paid with the Athleta MasterCard—and thereby required Former Husband to pay a sum at least partially comprised of expenses that he contended he had already paid. The trial court specifically pointed to an absence of evidence suggesting that any of the $15,793.13 was "unreasonable" or "not in compliance" with the marital settlement agreement, even though Former Husband was not given the opportunity to present such evidence to support his theory.

8

Though the trial court's adherence to the one-hour time limitation set for the hearing is understandable, due process required that the trial court complete the hearing and allow Former Husband the opportunity to present evidence on the disputed factual issue of what he had already reimbursed and what he had not. *Cf. Julia v. Julia*, 146 So. 3d 516, 520 (Fla. 4th DCA 2014) ("[S]ummarily shortening proceedings can give rise to a due process violation when they fail to afford a party a full, fair, and meaningful opportunity to be heard . . . ."). We reverse the trial court's order and remand for the trial court to complete the hearing on Former Wife's motion for contempt and enforcement, to include an opportunity for Former Husband to present evidence regarding his contention that he had already reimbursed Former Wife for some of the child-related expenses that she contended she was still owed. *See, e.g., Walters v. Petgrave*, 248 So. 3d 1202, 1203 (Fla. 4th DCA 2018) (reversing based on a procedural due process violation and remanding "for completion of the final hearing to allow the mother to present her case-in-chief" and for both parties to "present closing arguments" at the conclusion of the evidence).

Reversed and remanded.

SLEET, C.J., and LaROSE, J., Concur.

––––––––––––––––––––––––––––

Opinion subject to revision prior to official publication.