OTT, Judge.
Appellant/ex-wife appeals several aspects of a final judgment of dissolution of marriage. We agree with her contention that permanent alimony and attorney’s fees should have been awarded.
The lower court made no provision for permanent alimony and ordered the ex-husband to pay rehabilitative alimony of $100 per month for 12 months. We hold that such an award under the evidence in this case constituted a gross abuse of discretion.
The ex-husband’s ability to pay permanent alimony has been established. His salary rose from $22,622 in 1974 to $42,190 in 1976. His occupation — that of a start up engineer — is by his own admission a stable one. He testified that there exists strong demand in his particular field. Although he has produced evidence that his financial picture is not as favorable at the present time — i. e., his gross wage is $560/week rather than $590 week — he has the ability to support his ex-wife.
The ex-wife’s health is poor — she is legally blind. She is a person of limited education and is obviously much less equipped to be able to work at this time than she was at the time of their marriage 15 years ago [at which stage her only employment experience was that of a waitress]. She must be driven by someone else (or walk) and cannot read except with great difficulty and limited results. That she is accepted or qualified as totally disabled under Social Security is a good indication of the severity of her condition. In short, she has little potential for self-support.
The ex-wife should seek rehabilitation so that she can enter some useful and remunerative occupation or employment and the trial court is correct in encouraging her to do so. Under the circumstances this will be far more difficult than it ordinarily would be. Education and training of such handicapped persons is not readily available and no doubt comes at an increased cost. All of this was known to the trial court but there was no definitive evidence suggesting reliable answers as to what, where, how long and the cost of rehabilitation or likelihood of its success. Accordingly, permanent alimony is proper. As this court pointed out in Lash v. Lash, 307 So.2d 241, 243 (Fla. 2d DCA 1975):
[Rehabilitative alimony presupposes the potential for self-support. Without this capacity, there is nothing to which one can be rehabilitated.
See Reback v. Reback, 296 So.2d 541 (Fla. 3d DCA 1974).
Until the nature and extent of the appellant’s capacity for rehabilitation can be reasonably established there is no way, under the evidence in this case, to even conclude *1290 that she can be rehabilitated, let alone how long it will take, the cost thereof and what financial return it will command once accomplished. We therefore reverse or strike that part of the final judgment awarding the ex-wife $100 per month rehabilitative alimony and set permanent alimony at $250 per month.
After our award the ex-wife will receive $250 per month in permanent alimony, $201 per month in Social Security benefits and $125 per month as child support for a monthly total of $576.00. The ex-husband will pay the $375 in alimony and child support out of his monthly gross income of approximately $2,425 ($560 per week X 4V3 weeks). We are not unsympathetic with the ex-husband’s net income situation considering his increased salary deductions and other expenses. However, economic adjustments necessarily follow in these situations. Furthermore, we believe that the ex-husband’s payment of what amounts to about one week’s net salary per month will not be too great a sacrifice especially in view of his improved tax situation.
Several Florida decisions in which permanent alimony was awarded involved ex-wives who were also poorly equipped to support themselves. In Messer v. Messer, 342 So.2d 1076 (Fla. 2d DCA 1977) this court held that the trial court had abused its discretion in failing to provide permanent alimony to a wife who was 58 years old with “some physical and emotional impairment.” The court pointed out that she would have difficulty in finding employment.
In Norton v. Norton, 328 So.2d 484 (Fla. 1st DCA 1976) the court affirmed an award of permanent alimony noting that although the wife had worked outside the home during the 19 year marriage, she now had a physical condition (a heart murmur) which would make it difficult for her to find employment.
In McNaughton v. McNaughton, 332 So.2d 673 (Fla. 3d DCA 1976) the court ordered permanent alimony stating that the 43 year old wife had no income or training. The court pointed out that the wife would be 54 years old at the time the alimony terminated and that there was no way to determine her ability to support herself at that time.
In Hawkesworth v. Hawkesworth, 345 So.2d 359 (Fla. 3d DCA 1977) the wife had medical problems (high blood pressure and a kidney ailment). The court held that a failure to award permanent alimony to the 46 year old wife, who had not worked since the first days of their marriage 24 years before, would constitute an abuse of discretion.
In West v. West, 345 So.2d 756 (Fla. 4th DCA 1977) the court ordered permanent alimony where the wife was 57 years old and had not worked for 35 years. The court found that the record was bereft of any indication of the wife’s potential for self-support.
Finally, in McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977) the court held that if the lower court’s award was allowed to stand ($500 a month rehabilitative alimony for 5 years; $500 a month permanent alimony until his death or her remarriage) the wife would be financially “devastated.”
We think the appellant’s condition and circumstances are far worse than any of those dealt with in the foregoing cases.
Also, in error was the lower court’s denial of attorney’s fees. The court evidently felt the ex-wife and the ex-husband’s relative financial positions established the ex-wife’s need and the ex-husband’s ability to contribute in this regard but denied any fee on the basis of no acceptable evidence as to the amount of fee to be allowed the ex-wife’s attorney. The ex-wife offered the testimony of two experts on the proper amount of the fee. Both were fully qualified and the court accepted them as experts entitled to express an opinion on the value of legal services in such cases. The following colloquy occurred during the cross examination of the first export (Fitzpatrick):
Q. Mr. Fitzpatrick, is your opinion based strictly upon — you said Eighteen Hundred Dollars?
*1291 A. Yes.
Q. Is that based strictly upon the examination of those two files.
A. No.
Q. Is it based in part upon what Mr. Pattinson [attorney for the wife] told you?
A. In part.
MR. BRADSHAW: Your Honor, we move to strike the testimony of the witness as to his opinion because .
THE COURT: Motion granted.
Prior to this exchange, Fitzpatrick had testified that he had reviewed both the attorney’s file (for 1 hour) and the court file (for 20 minutes).
The second expert called by the ex-wife was Kovach. Kovach testified that he had spent two hours reviewing the files. He also explained what he regarded as important in the files and as to his experience in domestic relations matters. Then the following exchange occurred:
Q. [By wife’s attorney] Based upon your examination that you have already testified of the Court file and my personal file, do you have an opinion as to the value of my services rendered?
A. I do.
Q. What is that opinion?
MR. BRADSHAW: To which we object, your Honor, because it would be based upon the facts that are not in evidence and it is an improper statement of facts and the hypothetical question.
THE COURT: Objection sustained.
As with the striking of Fitzpatrick’s testimony the sustaining of the objection to Kovach’s testimony is based upon a highly technical approach to the admissibility of evidence. The result contravenes traditional standards of justice and fair play and results in arbitrarily penalizing the ex-wife. Under such circumstances we cannot condone the action of the lower court in denying the ex-wife a fair opportunity to prove attorney’s fees.
We find no merit with the ex-wife’s other contentions. We note in passing that it is difficult to reconcile the court’s effective denial of costs to the ex-wife [the ex-wife’s itemized costs totaled $572.71; the court awarded $37.50]. However, the ex-wife has failed to make error appear.
We reverse the lower court’s granting of rehabilitative alimony and direct that the ex-husband pay permanent alimony of $250 per month. We remand the question of an appropriate award of attorney’s fees, both in the proceedings below and on this appeal, to the lower court for it to allow and fix an adequate fee in subsequent proceedings.
BOARDMAN, C. J., and HOBSON, J., concur.