NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

KIMBERLY TAYLOR,                    )
                                    )
            Appellant,              )
                                    )
v.                                  )        Case No. 2D14-3930
                                    )
THOMAS S. TAYLOR,                   )
                                    )
            Appellee.               )
                                    )
_____     )

Opinion filed October 9, 2015.

Appeal from the Circuit Court for Polk
County; Jalal A. Harb, Judge.

Jean Marie Henne of Jean M. Henne,
P.A., Winter Haven, for Appellant.

Karie L. Sanoba of Karie L. Sanoba, P.A.,
Lake, for Appellee.


ALTENBERND, Judge.

            Kimberly Taylor appeals the final judgment of dissolution of her marriage

to Thomas S. Taylor.  She argues primarily that the trial court erred by awarding

durational alimony rather than permanent alimony in this long-term marriage.  We

conclude that the judgment does not contain the findings necessary under section

61.08, Florida Statutes (2012), to support an award of durational alimony.  Our review of

the record convinces us that the insufficient findings impede appellate review.  See

Wright v. Wright, 135 So. 3d 1142 (Fla. 5th DCA 2014) (reversing a denial of permanent alimony in a long-term marriage where the absence of findings impeded review). Without better findings, this court cannot conclude that the trial court engaged in a legally correct decision-making analysis in choosing durational alimony rather than permanent alimony. Accordingly, we reverse the award of alimony in the final judgment and remand with special instructions.

## I. THE FACTS

The parties in this case were married in 1990. The marriage lasted twenty-two years. At the time of the dissolution in 2014, the parties were in their mid-forties and were in good health. They have two children, one of whom was an adult by the time the final judgment was entered. The other became an adult during the pendency of this appeal.

At the time of the dissolution, the Husband had a good job with a large corporation earning approximately $86,000 per year in addition to health and retirement benefits. The Wife had been a teacher in a private school in the early years of the marriage. Eventually the Husband wanted to return to school, so the Wife took a higher paying job with an insurance company. After the Husband completed his education, the Wife quit her job to stay at home with the children. About ten years before the dissolution, she reentered the workforce as a part-time transcriptionist for a doctor. At the time of the dissolution, she worked approximately twenty-five hours a week making fourteen dollars an hour or about $1500 a month. She did not receive benefits. In the final judgment, the trial court imputed $24,000 per year as income for the Wife based on full-time employment, and that amount is not disputed. The trial court also reasonably

concluded that the Wife's income was likely to increase in the future, but there is no evidence or finding concerning any increase in income in the foreseeable future. See Purin v. Purin, 158 So. 3d 752, 753 (Fla. 2d DCA 2015) ("Generally, 'trial courts may not consider future or anticipated events in setting current alimony . . . due to the lack of an evidentiary basis or the uncertainty surrounding such future events.' " (quoting Nelson v. Nelson, 651 So. 2d 1252, 1254 (Fla. 1st DCA 1995))).

The equitable distribution in this case is somewhat difficult to calculate. There is no spreadsheet or other mathematical division of the property to fulfill the trial court's stated intention to divide the assets equally. The retirement funds are divided equally based on their value on the date of filing in June 2012, but that value is not determined in the judgment. The court ordered the parties to sell the marital residence with the expectation that it would generate about $137,000 in net equity.[1] Although not expressly stated in the final judgment, it appears that the trial court divided equally about $400,000 in marital equity. The value of the home and the retirement accounts comprised most of this equity.

Concerning alimony, the trial court correctly determined that the Wife had need for support and that the Husband had the ability to pay support. The Wife's true level of need is somewhat difficult to review on appeal because she and the minor child were living in the marital residence, which the trial court ordered to be sold. The final judgment does include cursory findings under section 61.08, but those findings contain little more than the facts already recited in this opinion. In conjunction with the findings, the final judgment states: "The Court finds, considering the dictates of Chapter 61.08,

---

[1]At oral argument, the parties agreed that the home had been successfully sold during the pendency of this appeal.

the Husband shall be directed to pay temporary alimony in the sum of One Thousand and 00/100 Dollars ($1000.00), per month, for a period of four (4) years, beginning June 1, 2014." In a later paragraph, the trial court repeats this finding but correctly describes the alimony as "durational," rather than as "temporary." The Wife on appeal challenges this award of durational alimony.[2]

## II. THE STATUTORY FRAMEWORK FOR AWARDING ALIMONY

Section 61.08 was amended in 2010 to authorize an award of "durational" alimony and also to recognize statutorily "bridge-the-gap" alimony. Ch. 2010-199, § 1, at 2405-08, Laws of Fla. The terms and conditions for durational alimony were further refined in an amendment in 2011. See ch. 2011-92, § 79, at 1703-04, Laws of Fla. Thus, the option of durational alimony is still relatively new.

With these amendments, the statutory framework now divides the decision-making process for alimony into essentially four steps. As explained in more detail below, the court determines: (1) a party's need for support; (2) the other party's ability to pay; (3) the type of alimony or the types of alimony appropriate in the case; and (4) the amount of alimony to award.[3]

Under subsection 61.08(2), "[i]n determining whether to award alimony or maintenance, the court shall first make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance." Although described as the "first" step,

_____

[2]The Wife also challenges an adjustment to equitable distribution based on the parties' payment of certain credit card statements. We cannot conclude from this record that the trial court erred in this decision.

[3]Because the trial court erred in this case during the third step, we have no reason to discuss the fourth step.

this is actually two steps.  In the first step the court decides whether a party has actual need for support.  If so, it goes to the second step of determining whether the other party has the ability to pay some amount of support.  These two steps involve questions of fact that need to be supported by competent, substantial evidence.

Once need and ability have been determined, the third step is to determine which type or types of alimony to select as the appropriate remedy.  See id. Section 61.08 provides the trial court with four approaches to alimony that are not always mutually exclusive.  See §§ 61.08(5)-(8).  The court can award (1) bridge-the-gap alimony under subsection 61.08(5); (2) rehabilitative alimony under subsection 61.08(6); (3) durational alimony under subsection 61.08(7); and (4) permanent alimony under subsection 61.08(8).  The court is expressly authorized to award "any combination of those forms of alimony."  § 61.08(1).

The mandated list of findings under subsection 61.08(2) is used to determine "the proper type and amount of alimony or maintenance under subsections (5)-(8)."  Although it is unquestionable that a trial court must use its reasoned discretion in selecting the type of alimony or the types of alimony best suited for a particular case, section 61.08 places considerable limitations on this discretionary decision and requires the court to adjust the decision-making process depending on the length of the marriage.  See §§ 61.08(2), (4), (8).  In this step, the trial court is applying the relatively new and complex statute to the facts of the case.  Given the level of complexity in this decision, it is important for the trial court to demonstrate on the record or in its order that it has applied the correct law when selecting its choice of alimony.  See, e.g., Valente v. Barion, 146 So. 3d 1247 (Fla. 2d DCA 2014) (reversing award of permanent alimony in

a moderate-term marriage where trial court appeared to apply the wrong law in its decision making).

Subsection 61.08(4) establishes a "rebuttable presumption" that a marriage having a duration of seventeen years or greater is a long-term marriage. In this case, there is no dispute that the Taylors' twenty-two-year marriage was a long-term marriage. In the case of such a long-term marriage, "[p]ermanent alimony may be awarded . . . if such an award is appropriate upon consideration of the factors set forth in subsection (2) . . . ." § 61.08(8). There is no special burden of proof applicable to the award of permanent alimony in a long-term marriage. Nevertheless, when it is awarded the court must "include a finding that no other form of alimony is fair and reasonable under the circumstances of the parties." Id.

By contrast, durational alimony is awardable "when permanent periodic alimony is inappropriate." § 61.08(7). The purpose of durational alimony "following a marriage of long duration" is to award a limited period of support "if there is no ongoing need for support on a permanent basis." Id.[4]

---

[4]The findings required for permanent alimony and durational alimony, on first examination, feel as if they are in conflict. Although we would not expect a trial court to articulate this concept, the two provisions seem to require the trial court to find "that no other form of alimony [than permanent alimony] is fair and reasonable under the circumstances of the parties" because the court is unable to determine that permanent alimony is "inappropriate," given that it cannot conclude that "there is no ongoing need for support on a permanent basis."

## III.  THE JUDGMENT DOES NOT CONTAIN THE NECESSARY FINDINGS TO SUPPORT THE AWARD OF ALIMONY

The difficulty that this court faces on review of the trial court's judgment is that the trial court did not expressly decide that permanent periodic alimony was "inappropriate."  See § 61.08(7).  Likewise, it did not find that there was "no ongoing need for support on a permanent basis."  See id.  Although these determinations may sometimes be implicit within the findings made under subsection 61.08(2), in this case the findings give us no guidance as to why permanent alimony was inappropriate.  Given that the Wife does not have a history of full-time employment with benefits and that the court actually imputed income to her, we cannot assume that the trial court made a proper, implicit finding that she had "no ongoing need for support on a permanent basis."[5]  See Julia v. Julia, 146 So. 3d 516, 522 (Fla. 4th DCA 2014) (reversing award of durational alimony where findings were insufficient to support the award).  Cf. Fichtel v. Fichtel, 141 So. 3d 593, 595 (Fla. 4th DCA 2014) (affirming an award of durational alimony for a long-term marriage where the trial court found that "durational alimony [wa]s warranted and . . . no other form of alimony [wa]s appropriate," and the final judgment indicated that the trial court considered each of the factors in subsection 61.08(2)).

As we did in Purin, we observe that there may be occasion for an award of nominal permanent alimony in combination with an award of durational alimony.

_____

[5]We do not decide today whether the finding that there is "no ongoing need for support on a permanent basis" must be based on the facts existing at the time of the dissolution proceeding, as compared to a fact-based prediction about future income.  But an interpretation of the statute to permit a future prediction would be in conflict with the judiciary's current approach to such awards.  See Purin, 158 So. 3d at 753.

158 So. 3d at 754. The length of an award of durational alimony can be extended only "under exceptional circumstances." § 61.08(7). Especially in a case like the Taylors' where the trial court awards durational alimony for less than a quarter of the statutorily permitted length—i.e., the length of the marriage—an erroneous prediction of the future by the trial court at the time of the final judgment could have serious consequences for the party in need of support. Until the law has developed so that there is certainty as to whether the circumstances to extend durational alimony are or are not comparable to those permitting a modification of permanent alimony, a nominal award of permanent alimony in conjunction with an award of durational alimony may be a reasonable safeguard.

Accordingly, we reverse the final judgment only to the extent that we reverse the award of alimony. On remand, especially in light of the fact that the house has sold and the Wife's employment may have changed, the trial court is authorized to consider additional evidence relevant to this four-step determination in resolving the issue of alimony.

Affirmed in part, reversed in part, and remanded.


KHOUZAM and SLEET, JJ., Concur.