NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JENNIFER JEAN KRUSE, f/k/a            )
JENNIFER KRUSE LEVESQUE,              )
                                      )
          Appellant,                  )
                                      )
v.                                    )          Case No. 2D15-1391
                                      )
MARTIN IVAN LEVESQUE,                 )
                                      )
          Appellee.                   )
                                      )
_____)

Opinion filed June 10, 2016.

Appeal from the Circuit Court for Pinellas
County; Amy M. Williams, Judge.

Christin C. Brennan of Meros, Smith,
Lazzara, Brennan, Brennan & Olney,
P.A., St. Petersburg, for Appellant.

Jane H. Grossman, St. Petersburg, for
Appellee.

WALLACE, Judge.

          Jennifer Jean Kruse, f/k/a Jennifer Kruse Levesque (the Former Wife)

appeals the final judgment that dissolved her moderate-term marriage to Martin Ivan

Levesque (the Former Husband).  The Former Wife challenges the trial court's decision

to award her durational alimony instead of permanent periodic alimony, and she also

challenges a separate evidentiary ruling.  There is no cross-appeal.  Because the trial

court found that the Former Wife was disabled and the undisputed evidence established that she was unable to return to work, the trial court abused its discretion in awarding durational instead of permanent periodic alimony. Accordingly, we reverse the award of durational alimony and remand for an award of permanent periodic alimony to the Former Wife.

## I. THE FACTS

The parties met while they were both attending college. They were married on December 31, 2002,[1] and they separated in November 2012. The parties did not have any children. The Former Wife filed her petition for dissolution of the marriage on November 15, 2013. Thus the parties' marriage lasted for almost eleven years, making it a moderate-term marriage. See § 61.08(4), Fla. Stat. (2013). At the time of the final hearing, the Former Husband was forty-two years old; the Former Wife was forty-three.

The Former Husband has a degree in information management systems. During the term of the marriage, he was employed in the computer industry. At the time of the final hearing, the Former Husband had a gross income of $9750 per month. His net monthly income was $7315 per month.

The Former Wife has a degree in psychology. When the parties began their married life, she was working as a counselor and earned approximately $25,000 annually. Later, the Former Wife began to experience back pain and other maladies. In

---

[1]As a result of a scrivener's error, the Final Judgment of Dissolution Marriage erroneously states the date of the parties' marriage as December 31, 2012.

2007, with the Former Husband's agreement, the Former Wife stopped working and began the process of applying for Social Security disability.

On March 29, 2013, an administrative law judge (the ALJ) ruled that the Former Wife had been disabled under sections 216(i) and 223(d) of the Social Security Act since February 12, 2007. The ALJ determined that the Former Wife "has the following severe impairments: fibromyalgia, impairment of the right upper extremity, traumatic brain injury, [and] disorders of the back." The ALJ also found that the Former Wife suffered from "attention deficit and hyperactivity ('ADHD')," but noted that "this condition is well controlled with medication." The Former Wife's traumatic brain injury and the related impairment of her right arm predated the marriage. However, the Former Wife's fibromyalgia and back problems did not arise until after the marriage. The fibromyalgia and back problems ultimately led to the Former Wife's decision to stop working in 2007.

At the time of the final hearing, the gross amount of the Former Wife's disability payment was $880 per month. The net amount that she received after a deduction for insurance was $711 per month. The Former Wife did not have any other income.

The parties had enjoyed a modest lifestyle and did not have substantial assets. They had purchased a home at the height of the real estate boom of the last decade. The parties had difficulties making the payments on the home after the Former Wife stopped working. Real estate prices plummeted at about the same time, and the parties ultimately disposed of the home through a short sale. The parties amicably resolved the division of their remaining assets before the final hearing.

## II. THE EVIDENCE AT THE FINAL HEARING AND THE TRIAL COURT'S RULING

The only contested issue before the trial court at the final hearing was the Former Wife's request for an award of permanent periodic alimony. In support of her claim, the Former Wife testified about the adverse impact that her back pain and other health issues had on her ability to work. She also presented the testimony of her treating physician. He testified that the Former Wife's medical issues rendered her incapable of regular employment. Notably, the Former Wife presented the testimony of a vocational rehabilitation counselor who opined that she was "currently not able to work in any capacity." Finally, the Former Wife presented the testimony of an attorney who specialized in Social Security disability and other disability cases. He explained the process that the Former Wife had to pursue to obtain the determination that she had been disabled from February 12, 2007. The attorney also testified that the Former Wife's disability benefits were subject to income taxation.

The Former Husband did not raise a substantial challenge to the evidence about the Former Wife's medical problems. Instead, the Former Husband attributed the Former Wife's inability to work to claimed abuse of medications prescribed by the Former Wife's treating physician. The Former Husband presented his case primarily through his own testimony and the cross-examination of the Former Wife and her witnesses. However, the Former Husband also presented the testimony of a licensed psychologist. Over timely and repeated objections by the Former Wife, the trial court permitted the psychologist to offer the "hypothesis" that "a part of [the Former Wife's] problems are related to the brain fog that may be related to her use or her prescribed use of narcotic pain medications." Because the psychologist was not qualified as a

medical doctor or a pharmacologist, he qualified his "hypothesis" with the caveat that it was "something that needs to be evaluated more thoroughly by a medical professional."

The trial court entered a final judgment with detailed findings of fact concerning the factors set forth in section 61.08(2). The trial court rejected the Former Wife's request for an award of permanent periodic alimony. Instead, the trial court awarded the Former Wife durational alimony in the amount of $1800 per month for a period of four years. Dissatisfied with the award of durational instead of permanent periodic alimony, the Former Wife brings this appeal.

### III. THE FORMER WIFE'S APPELLATE ARGUMENTS

On appeal, the Former Wife makes two points. First, she contends that the clear and convincing evidence presented at trial only supports an award of permanent periodic alimony and that no other form of alimony is appropriate under the circumstances. Second, the Former Wife argues that the trial court erred in permitting the psychologist called by the Former Husband to testify about lay opinions that were not within any degree of psychological certainty. Based on our disposition of this case, we need not consider the Former Wife's second argument.

### IV. DISCUSSION

Our review of the trial court's decision to award durational instead of permanent alimony is for abuse of discretion. See Doganiero v. Doganiero, 106 So. 3d 75, 78 (Fla. 2d DCA 2013); Fichtel v. Fichtel, 141 So. 3d 593, 595 (Fla. 4th DCA 2014). However, the trial court's discretion in this regard is not unlimited. See Doganiero, 106 So. 3d at 78 (citing Udell v. Udell, 998 So. 2d 1168, 1170 (Fla. 2d DCA 2008)).

The trial court's detailed findings of fact are critical to our resolution of this case. The trial court found—in accordance with the prior determination by the Social Security Administration and the other evidence presented—that the Former Wife is disabled. The first factor pertinent to this determination is mood disorders and the second is fibromyalgia. The trial court also found that the Former Wife's net income from Social Security is $711[2] per month. The Former Wife has no other sources of income. With expenses of $2352 per month, the Former Wife has a deficit of $1641 per month. The trial court further found that the Former Husband has a good paying job as a chief operating officer of a software company at which he earns approximately $9750 per month. With regard to the parties' circumstances during the six to seven years preceding the final hearing, the trial court found that "[s]ince 2007, when the [Former] Wife stopped working, the [Former] Husband has supported both the parties from 2007 until current, with the sole exception of the [Former] Wife's Social Security Disability benefits."

Based on the undisputed evidence before it, the trial court properly concluded that "[t]he [Former] Wife has a need and the [Former] Husband has the ability to pay alimony." Particularly pertinent to our review is the trial court's finding that the testimony presented established "that the [Former] Wife is not able to return to work." Notably, the trial court made no finding that the Former Wife could reacquire the capacity for self-support in the foreseeable future or that her need for support was likely to change. The Former Wife's inability to return to work or to become self-supporting—

---

[2]As a result of a scrivener's error, this figure appears as "$771" in the Final Judgment of Dissolution of Marriage. The trial court's calculations were not affected by this error.

as the trial court properly noted—eliminated the possibility of an award of rehabilitative alimony as a topic for consideration.

Using the four-step framework for the decision-making process for alimony as explained in Taylor v. Taylor, 177 So. 3d 1000, 1002-03 (Fla. 2d DCA 2015), we may review the trial court's consideration of the alimony issue in this case. In the first step, the trial court properly determined that the Former Wife had an actual need for alimony. In the second step, the trial court also properly determined that the Former Husband had the ability to pay support. At the third step, the trial court was required to determine which type or types of alimony to select as the appropriate remedy under all of the circumstances. It was at the third step that the trial court's analysis went awry.

In accordance with section 61.08, the trial court had four possible approaches to the alimony question: (1) bridge-the-gap alimony under subsection 61.08(5); (2) rehabilitative alimony under subsection 61.08(6); (3) durational alimony under subsection 61.08(7); and (4) permanent alimony under subsection 61.08(8). Taylor, 177 So. 3d at 1003. In accordance with subsection 61.08(1), the trial court had the authority to award "any combination of these forms of alimony." Taylor, 177 So. 3d at 1003 (quoting the statute).

In this case, bridge-the-gap alimony was obviously inappropriate. And, as the trial court noted, rehabilitative alimony could not be considered because the evidence established "that the [Former] Wife is not able to return to work." Moreover, neither party had presented the trial court with "a specific and defined rehabilitative plan" as is required before an award of rehabilitative alimony can be made. See §

61.08(6)(b). By a process of elimination, the trial court's two remaining choices were durational alimony and permanent alimony.

Regarding durational alimony, section 61.08(7) provides, in pertinent part, as follows:

> Durational alimony may be awarded when permanent periodic alimony is inappropriate. The purpose of durational alimony is to provide a party with economic assistance for a set period of time following a marriage of short or moderate duration or following a marriage of long duration if there is no ongoing need for support on a permanent basis.

On the other hand, "[p]ermanent alimony may be awarded to provide for the needs and necessities of life as they were established during the marriage of the parties for a party who lacks the financial ability to meet his or her needs and necessities of life following a dissolution of marriage." § 61.08(8). Because the parties' marriage was of moderate duration, the trial court could make an award of permanent periodic alimony to the Former Wife only "if such an award is appropriate based upon clear and convincing evidence after consideration of the factors set forth in subsection [61.08](2)." Id.

In its consideration of the various factors under section 61.08(2) in this case, the trial court specifically found that the Former Wife was not able to return to work. This finding has ample support in the record. Undeniably, the Former Wife's expenses exceeded her income from the disability payments. The Former Wife's inability to return to work left her with no prospects for additional income. Thus an award of permanent instead of durational alimony was appropriate because the Former Wife demonstrated by clear and convincing evidence that she lacked the financial ability to meet her needs and the necessities of life following the dissolution of the marriage. The trial court abused its discretion in awarding alimony that would terminate within a

- 8 -

limited period of time when the record and the trial court's findings showed that the Former Wife lacked either the actual capacity for self-support or the potential to develop that capacity. Cf. Ruszala v. Ruszala, 360 So. 2d 1288, 1289 (Fla. 2d DCA 1978) (reversing an award of rehabilitative alimony and remanding for an award of permanent periodic alimony where the wife, who was legally blind and was receiving Social Security disability payments, had "little potential for self-support"); Lash v. Lash, 307 So. 2d 241, 243 (Fla. 2d DCA 1975) (noting that "rehabilitative alimony presupposes the potential for self[-]support" and "[w]ithout [t]his capacity, there is nothing to which one can be rehabilitated"); G'Sell v. G'Sell, 390 So. 2d 1196, 1197 (Fla. 5th DCA 1980) (reversing an award of rehabilitative alimony and remanding for an award of permanent periodic alimony where the wife did not have the actual or potential capacity for self-support). Here, the trial court's findings of fact were insufficient to support an award of durational as opposed to permanent periodic alimony because the clear and convincing evidence showed that the Former Wife lacked the financial ability to meet her needs and the necessities of life following the dissolution of her marriage. See § 61.08(8); see also Doganiero, 106 So. 3d at 78 (questioning whether an award of durational rather than permanent alimony was appropriate where "the trial court found that the Wife has limited income potential, that the marriage's duration was 16 years and 10 months, that the Wife was 49 years of age at the time of the final judgment and the Husband was 52 years of age, and that virtually all of the parties' income came from the Husband's investments"); Levy v. Levy, 900 So. 2d 737, 744-45 (Fla. 2d DCA 2005) (remanding for the consideration of an award of permanent periodic alimony in a short-term marriage

case where the wife was disabled as a result of medical issues arising after the marriage and her income was limited to Social Security disability payments).

## V.  CONCLUSION

Based on the evidence in the record and the trial court's findings of fact, the only form of alimony that was appropriate under the circumstances of this case is permanent periodic alimony.  Thus the trial court abused its discretion in making an award of durational as opposed to permanent alimony.  Accordingly, we reverse the portion of the final judgment that awards durational alimony and remand for the entry of an award of permanent periodic alimony in an amount to be determined by the trial court.  The amount of the permanent periodic alimony award need not be in the same amount as the award of durational alimony.  On remand, the trial court shall also amend the final judgment to reflect the correct date of the parties' marriage.  In all other respects, we affirm the final judgment.

Affirmed in part, reversed in part, and remanded.


LUCAS and SALARIO, JJ., Concur.